534 A.2d 473

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jerome VAN NEST, Appellant.**

Supreme Court of Pennsylvania.

Argued May 15, 1987.

Decided Dec. 11, 1987.

Richard C. Snelbaker, Mechanicsburg, for appellant.

John M. Eakin, Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

46

## OPINION

McDERMOTT, Justice.

Appellant, Jerome Van Nest, was appointed in 1967 to fill a vacancy in the office of tax collector for the Borough of Wormleysburg, and upon successive re-elections served in that capacity until 1982. On May 12, 1983, a jury sitting in the Court of Common Pleas of Cumberland County convicted appellant of eight counts of embezzlement, in violation of Section 39 of the Local Tax Collection Law,[1] and one count of theft by failure to make required disposition of funds received, in violation of Section 3927 of the 1972 Crimes Code.[2] Post-verdict motions for a new trial and arrest of judgment were filed, and the court granted appellant's motion for a new trial on the embezzlement convictions,[3]

1. Act of May 25, 1945, P.L. 1050, § 1, *as amended;* 72 P.S. § 5511.1 *et seq.*

2. Section 3927 of the Crimes Code, 18 Pa.C.S. § 3927, provides as follows:

    § 3927. THEFT BY FAILURE TO MAKE REQUIRED DISPOSITION OF FUNDS RECEIVED

    (a) OFFENSE DEFINED.—A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

    (b) PRESUMPTIONS.—An officer or employee of the government or of a financial institution is presumed:

    (1) to know any legal obligation relevant to his criminal liability under this section; and

    (2) to have dealt with the property as his own if he fails to pay or account upon lawful demand, or if an audit reveals a shortage or falsification of accounts.

    Act of December 6, 1972, P.L. 1482, No. 334, § 1, effective June 6, 1973.

3. The reason the court granted appellant's motion for a new trial is germane to our analysis. The court opined that a new trial was warranted since it did not instruct the jury on the requisite element of criminal intent necessary to be proven before a conviction could be sustained. Additionally, the Commonwealth has elected not to prose-

but denied the motions as they pertained to the theft conviction. Judgment of sentence was imposed on October 16, 1984, and appellant was sentenced to undergo imprisonment for not less than seven nor more than twenty-three months in Cumberland County prison. Additionally, appellant was required to pay the costs of prosecution. On appeal, the Superior Court affirmed the conviction. 354 Pa.Super. 632, 508 A.2d 344. Subsequently, we granted appellant's petition for allowance of appeal.

In this appeal appellant raises two basic issues.[4] The first challenges the sufficiency of the evidence. The second challenges the applicability of a statutory presumption of intent under the facts of this case. We will address the issues seriatim.

Where a defendant challenges his conviction on appeal it is well established that the test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the trier of fact could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Jackson,* 506 Pa. 469, 485 A.2d 1102 (1984); *Commonwealth v. Macolino,* 503 Pa. 201, 469 A.2d 132 (1983); *Commonwealth v. Keblitis,* 500 Pa. 321, 456 A.2d 149 (1983).

The relevant factual background of the case is as follows.

The appellant was the duly elected tax collector for the Borough of Wormleysburg for over 15 years. While he held the office his wife was in fact the tax collector. His office was charged with collection of taxes for three different entities: the County; the Borough; and the West Shore School District. For tax purposes two separate bank ac-

cute appellant further on these charges, and consequently a nolle prosequi was entered on November 20, 1984.

**4.** Appellant's statement of "questions involved on appeal" total four, but broadly these four issues can be consolidated into the issues summarized above.

counts were maintained in his name, but clearly distinguished from his own personal funds.

Appellant's wife sent the tax notices to taxpayers, received and recorded the payments, deposited the monies received, and ultimately forwarded the monies to the authorities entitled to them. Appellant worked elsewhere, but when his wife fell ill all the duties he apparently neglected suddenly became his responsibility. Upon entering these duties he became aware of irregularities in the records. He discovered wrong deposits, dilatory record keeping, and borough and county tax receipts used to pay school tax obligations.

Upon making these discoveries, appellant contacted Robert L. Daub, a certified public accountant. Mr. Daub's accounting firm was the borough and school district auditor. Appellant explained the problems he was encountering in attempting to reconcile the tax records kept by his wife. On several different occasions appellant sought advice from Mr. Daub informally in hopes of straightening out the records. Unfortunately, due to appellant's extremely limited familiarity with the records, that was impossible. Following the completion of the school district audit Daub contacted the borough council president concerning these problems. A meeting was called with appellant, as a result of which all the tax records in appellant's possession were removed from his home and placed in borough offices. Mr. Daub immediately commenced an audit of the borough and county records, and based on these results the Commonwealth elected to prosecute.[5]

The evidence adduced at trial consisted primarily of Mr. Daub's testimony as the Commonwealth's key witness. He explained the results of the audit that ensued following the removal of the tax records from appellant's home. He testified that as of the date the records were removed, that being August 26, 1982, there was a discrepancy between the

---

5. Mrs. Van Nest, in a separate trial, was convicted by a jury of four counts of aiding and abetting an embezzlement under 72 P.S. § 5511.39.

money available in the bank accounts and the money payable to the taxing authorities. Specifically he testified that:

1) the balance appearing on the borough and county real estate tax bank statement as of September 13, 1982 was $17,590.80;

2) due to an erroneous deposit of school district tax monies into the borough account in the amount of $15,424.09, the adjusted balance of the borough and county account following transfer was $2,166.71;

3) additional amounts, labeled as credits, not verified by the audit, were allowed appellant in the amount of $1,512.81; and

4) the total amount of borough and county real estate tax monies charged to appellant as collected by the tax office amounted to $64,868.86.

The latter figure was derived by Mr. Daub from a combination of testimony from forty-three individual taxpayers who paid their borough and county real estate tax bills, as established by their receipted March 1, 1982 statements, coupled with a compilation of various tax statements discovered among the records gathered from appellant's home as having been paid to appellant.

With these figures before them—the adjusted bank balance of $2,166.71 plus the credits totalling $1,512.81 vis-a-vis the $64,868.86 charged to appellant as real estate taxes collected by his office—it was argued to the jury that a shortage of $61,189.34 existed, representing the difference between the actual amount in the borough and county real estate tax account and the amount that should have been in the account.

With this evidence, and only this evidence before the jury, the Commonwealth rested. Hence, the Commonwealth's case centered around this narrow view of comparing the monies received in payment of the March 1, 1982 tax notices with the monies on hand at the time the bank accounts were frozen by the borough authorities. The prosecution offered no evidence suggesting a reason for a discrepancy in the figures, nor did they offer any evidence that appellant

converted funds to his own use. Instead the Commonwealth relied, as did the courts below, on a legislative presumption to satisfy the intent element of the crime. *See* 18 Pa.C.S. § 3927(b)(2).[6]

The elements of the crime for which appellant was convicted are set out in Section 3927 of the Crimes Code, 18 Pa.C.S. § 3927.[7] In order to obtain a conviction the Commonwealth must prove the following four elements:

1. The obtaining of property of another;

2. Subject to an agreement or known legal obligation upon the receipt to make specific payments or other disposition thereof;

3. Intentional dealing with the property obtained as the defendant's own; and

4. Failure of the defendant to make the required disposition of the property.

*Commonwealth v. Ohle,* 503 Pa. 566, 581, 470 A.2d 61, 69 (1983) *cert. denied,* 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986) (quoting *Commonwealth v. Crafton,* 240 Pa.Super. 12, 16, 367 A.2d 1092, 1094–95 (1976)).

In the instant case there existed no question regarding elements one, two, and four. Mr. Van Nest, in his position of tax collector, did obtain the property of others subject to a legal obligation to make specific payment; and due to the discrepancy he effectively failed to make the required disposition. However, it is the proof or lack of proof concerning the third element which concerns us most, i.e., whether appellant intentionally dealt with the money as his own.

As we noted above the Commonwealth introduced no evidence which tended to prove that appellant intentionally dealt with the property as his own. Instead they sought a jury instruction based on the statutory presumption that:

(b) ...—An officer or employee of the government or of a financial institution is presumed:

. . . .

6. *See* footnote 2, *supra.*

7. *Id.*

(2) to have dealt with the property as his own if he fails to pay or account upon lawful demand, or if an audit reveals a shortage or falsification of accounts.

18 Pa.C.S. § 3927(b)(2). The basis of the Commonwealth's request was the existence of a shortage as evidenced by appellant's records on August 26, 1982. The trial judge gave this instruction, and the jury convicted.

Assuming the correctness of the trial court's decision to give the Commonwealth's requested instruction, and given the evidence summarized above, the jury had little choice but to return a verdict of guilty. However, appellant has challenged the propriety of the trial judge's decision to give the instruction under the evidence presented.

It is appellant's contention that the Commonwealth failed to prove that there was a real shortage between the funds collected and the funds remitted to the taxing authorities. He argues that at most the Commonwealth evidence demonstrated a paper shortage which was the result of his wife's careless operation of the tax accounts, a position which is amply borne out by the record. Hence, he argues, the Commonwealth was not entitled to the benefit of the presumption.

In his testimony appellant explained that upon taking over from his wife he discovered some old tax debts that should have been previously remitted to the taxing authorities. He then attempted to pay the delinquent bills out of the current funds. He was in the process of accomplishing this when the tax records were seized. The cause of the delinquency was explained by Mrs. Van Nest when she testified that at some point in 1981 she discovered an error in her accounts. Consequently, when a payment was received from a taxpayer during the discount period—in which two percent (2%) less than the face value was due— she would delay remittance to the taxing authority and submit the payment at the higher penalty rate—approximately ten percent (10%) over face value. In essence, Mrs. Van Nest was giving the taxing authorities more money than she collected since the payments were initially made by

52

the taxpayer at the lower discount rate.  With this bizarre pattern of systematic overpayment in place, funds were depleted faster than received, resulting in the account's deficiency.

If Mrs. Van Nest's explanation was accepted by the jurors she effectively exculpated the appellant.  Obviously, her explanation, fraught with incompetence, negligence, or both, was not accepted, and we do not rest our decision upon her testimony.  However, her testimony certainly did not help the Commonwealth prove that any funds were kept or used by the appellant for his own purposes; nor, significantly, did the Commonwealth's own evidence prove such.  The only Commonwealth evidence on this point was the testimony of Mr. Daub, which at ground zero failed to inculpate.  Under cross-examination he testified:

Q.  Am I correct that from all taxpayer information which you received, that all of the tax monies which were paid to the Van Nest tax office were in fact deposited to one or the other of the two tax accounts for which we have statements?

A.  I have no evidence that—

Q.  You answer mine yes or no.

A.  Yes sir, yes.

Q.  By that you mean that yes you have no evidence to show that there was any money other than—strike that.  You are indicating to me that the monies which were paid by the taxpayers went into the tax account?

A.  That's what I am indicating.

Q.  Am I also correct that the money that went into the tax accounts was paid over to one of the three taxing districts, whichever it might be, except for the balances that are presently frozen as we have indicated?

A.  Yes or no?

Q.  Yes.

A.  Yes.

Consequently, from the Commonwealth's own witness came the information that there was no evidence that money

collected by appellant, and/or his wife, went anywhere other than the tax accounts.

It is a rule of statutory construction that penal provisions must be strictly construed. *See* 1 Pa.C.S. § 1928. In the context of the present case we must interpret the term "shortage" to decide whether the legislature intended to require evidence of an actual shortage between the funds received by the Van Nests and the funds paid to the taxing authorities; or whether mere evidence of a paper shortage, between the amount allegedly due at a given point in time and the amount on hand, is sufficient. We think the only reasonable conclusion, consistent with strict construction, is that the former definition was intended. Otherwise we would open the door to criminal prosecution for every tax collector who fails to timely remit taxes [8], since when finally remitted more taxes would be due because of the penalties than were actually collected [9].

**8.** One should not infer from this decision that we mean to condone the failure of appellant to faithfully discharge his responsibilities as the elected tax collector; nor do we wish to excuse negligent tax collectors in general. However, the General Assembly has provided a civil avenue that the taxing authorities may utilize to sanction such behavior. Section 5511.41 of the Local Tax Collection Law, 72 P.S. § 5511.41, provides a taxing body with the remedy of filing a judgment on liability against a tax collector or his sureties for any unpaid amounts. In fact in this case the record reveals that the taxing districts filed such a claim with the surety and eventually reached a settlement in excess of $78,000, exclusive of interest. In addition, Section 5731 of the same statute, 72 P.S. § 5731, prohibits the reappointment of a defaulting tax collector.

What is clear to us is that the General Assembly anticipated the possibility of a less than efficient tax collector, and took steps to rectify such a situation without forever labeling that individual as a criminal.

**9.** We note that Section 3927 of the Crimes Code, under which appellant was prosecuted, was fashioned after Section 223.8 of the Model Penal Code. Though not dispositive it is instructive to refer to the comments attendant thereto:

The words 'deals with the property as his own' are designed to import the element referred to by other statutes as conversion. It is enough if the actor commingles the funds with his own and otherwise treats the property as though it were not subject to the specific obligation that has been undertaken. *Mere carelessness, moreover, does not suffice. The actor must know that he is not living up to his*

54

Therefore, since the prosecutor in this case failed to prove that the Van Nests actually collected more money than they eventually turned over to the taxing authorities, there was no "shortage" established within the meaning of Section 3927(b)(2). Hence it was error to permit the jury to consider the presumption. Without this presumption there was *no* evidence tending to show that appellant dealt with the property as his own. Consequently, the Commonwealth's case was lacking evidence on this critical element and appellant's sufficiency challenge must be sustained.

Accordingly, the order of the Superior Court is reversed and appellant is discharged.

NIX, C.J., did not participate in the consideration or decision of this case.

HUTCHINSON, former J., did not participate in the decision of this case.

*agreement and must purposely deal with the property as his own and fail to make the required payment or disposition....*
American Law Institute, Model Penal Code § 223.8, Comment 2(c) (Official Draft 1962) (emphasis added).