585 A.2d 1048

**COMMONWEALTH of Pennsylvania**

v.

**Mark J. STEIN, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 9, 1990.

Filed Jan. 28, 1991.

Bruce A. Antkowiak, Greensburg, for appellant.

Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for appellee.

Before ROWLEY, BECK and BROSKY, JJ.

BECK, Judge:

Following a bench trial, defendant-appellant Mark Stein was found guilty on 18 of 24 counts charging him with Theft by Failure to Make Required Disposition of Funds Received [1] and 18 of 24 counts of Conspiracy [2] for the theft crime. On appeal, Stein challenges the sufficiency of the evidence presented by the Commonwealth at trial. Appellant contends that the Commonwealth failed to prove each of the required elements of the crimes charged beyond a reasonable doubt. We agree with appellant, and therefore, vacate the judgment of sentence and order the discharge of appellant.

When considering a sufficiency of the evidence claim our review is limited. On appeal, we consider

> whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth [as the verdict winner], the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Brady*, 385 Pa.Super. 279, 282, 560 A.2d 802, 804 (1989) (quoting *Commonwealth v. Jackson*, 506

1. 18 Pa.C.S.A. § 3927(a) (1973).
2. 18 Pa.C.S.A. § 903(a) (1973).

Pa. 469, 472–73, 485 A.2d 1102, 1103 (1984)). Although our review of a trial court's findings of fact and conclusions of law is restricted, it is equally clear that "the conviction [of a defendant] must be based on more than mere suspicion or conjecture." *Commonwealth v. Roscioli,* 454 Pa. 59, 62, 309 A.2d 396, 398 (1973); *see also Commonwealth v. Frey,* 264 Pa.Super. 212, 215, 399 A.2d 742, 743 (1979).

Given this standard of review, the facts of this case, viewed most favorably to the Commonwealth, are as follows. Appellant Mark Stein was a salesperson for Stein Construction Company (the company), which was a sole proprietorship owned by appellant's brother, Larry Stein. The company primarily was involved in home repair and home improvement construction. It had been in business for approximately ten years. As a salesperson for the company, appellant's job was to secure contracts for home improvements. The evidence presented at trial clearly showed that Larry Stein, as the owner of the company, had complete control over Stein Construction. Mark Stein, as a salesperson, had no control over the company, its bank accounts, or its records. Moreover, appellant had no authority to dispatch subcontractors to worksites or to order supplies for the contracted jobs.

The Commonwealth's witnesses who had contracted with the company each described a scenario in which either appellant or a telephone solicitor for the company would contact them to solicit business. If the homeowner was interested, an appointment was set up for appellant to meet with the homeowner for further discussions. Upon request of the customer, appellant would estimate the cost of the job and would draft the contract. The required down payment that appellant would request was one-third to one-half of the total construction cost. At this time, appellant would also advise the homeowner that scheduling of the construction would be set at a later date, but that construction would begin within several weeks to several months. After drafting the contract and accepting the

deposit money, appellant would generally have no further contact with the homeowners.

The evidence at trial showed that appellant would always give the contracts he drafted and deposit checks he received to Larry Stein or to the company's bookkeeper. The deposit moneys would then be placed in the company bank account.

During the summer or fall of 1987 and through June of 1988, Larry Stein became dependent on Dilaudids. Due to his drug problem, Larry Stein was increasingly absent from the company and neglected his responsibilities. In particular, Larry Stein was not scheduling subcontractors to the worksites or ordering the required supplies for the contracts. Nonetheless, Larry Stein was withdrawing money from the company bank accounts. During this period of time, between September 1987 and June 1988, appellant continued to solicit and secure construction contracts for the company. All of the charges filed against appellant stem from contracts solicited by appellant, and entered into by Stein Construction between September 1987 and June 1988.

As a result of the extensive delays in scheduling the contracted work, an increasing number of complaints were received by the company's personnel. Eventually the homeowners who were unable to obtain a refund of their deposit moneys filed complaints with the local district justices. These complaints led to the filing of criminal charges against Larry Stein and appellant Mark Stein.[3]

 In order to find an individual guilty of Theft by Failure to Make Required Disposition of Funds Received,[4]

_____

3. Appellant's brother, Larry Stein, the owner of Stein Construction, pled guilty to the criminal charges filed against him.

4. Section 3927(a) of the Crimes Code provides in pertinent part: [a] person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition.
18 Pa.C.S.A. § 3927(a) (1972).

the Commonwealth must prove four elements beyond a reasonable doubt. *Commonwealth v. Van Nest,* 517 Pa. 44, 50, 534 A.2d 473, 476 (1987). The Commonwealth must prove that the defendant (1) obtained the property of another, (2) subject to an agreement or known legal obligation upon the receipt to make specific payments or other disposition thereof; that the defendant (3) *intentionally* dealt with the property obtained as the defendant's own; and (4) failed to make the required disposition of the property. *Id.* (citing *Commonwealth v. Ohle,* 503 Pa. 566, 581, 470 A.2d 61, 69 (1983), *cert. denied,* 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986)). In addition, an individual is guilty of Criminal Conspiracy [5] if, with the *intent* to promote or facilitate a crime, he or she agreed to aid another person in the attempt, solicitation, planning, or commission of the crime. 18 Pa.C.S.A. § 903(a); *Commonwealth v. Davis,* 312 Pa.Super. 85, 89, 458 A.2d 248, 250 (1983).[6]

We additionally note, that with respect to the intent element of these crimes, the legislature has defined "intent" to be the *"conscious object* to engage in conduct of that nature." 18 Pa.C.S.A. § 302(b) (1973) (emphasis add-

---

**5.** Criminal conspiracy is defined, pursuant to 18 Pa.C.S.A. § 903(a), as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a) (1973).

**6.** The Commonwealth asserts that appellant fails to understand that he was convicted as an accomplice to the theft crimes. Appellee's Brief, at 8; *see* 18 Pa.C.S.A. § 306(c) (1972). Regardless of appellant's understanding of accomplice liability, we note that the "intent" element required to be proven by the Commonwealth is the same for accomplice liability as for conspiracy. *Compare* 18 Pa.C.S.A. § 306(c) with § 903(a); *see Commonwealth v. Ruffin,* 317 Pa.Super. 126, 131–32 n. 7, 463 A.2d 1117, 1119–20 n. 7 (1983) (quoting *Commonwealth v. Davenport,* 307 Pa.Super. 102, 110, 452 A.2d 1058, 1062) ("[t]he intent required for criminal conspiracy is identical to that required for accomplice liability. In both crimes, a defendant must act with the 'intent of promoting or facilitating the commission of the offense' ").

ed); *see also Commonwealth v. Austin,* 258 Pa.Super. 461, 470, 393 A.2d 36, 40 (1978) (*en banc*).

At bar, the trial court found that the evidence proved each element of the crimes charged, beyond a reasonable doubt, because "[appellant] never used the money obtained by him to fulfill his legal obligations to the victims[; ... appellant] never intended to start or finish the home improvement jobs[; and] the funds obtained by the [appellant] were diverted by him and his brother to their own personal use indicating a criminal intent necessary for violation of the statute." Trial Court Opinion, at 4. Specifically addressing the intent element, the Commonwealth argues, by way of explaining the trial court's holding, that appellant's intent was proven because he *knew* when he sold the contracts in question that his brother's company was never going to fulfill the contracted work.[7] Appellee's Brief, at 11–12.

Upon reviewing all the evidence presented at trial, including all reasonable and proper inferences, in a light most favorable to the Commonwealth, we conclude the evidence does not establish proof of each element of the offenses charged beyond a reasonable doubt. Of the 24 witnesses called by the Commonwealth, 23 were homeowners who solely testified about their contact with appellant, the drafting of the contract, and their subsequent difficulties in either getting the company to begin the contracted work, or to return their advance money.[8] While this testimony could establish that appellant obtained the property of another subject to an agreement to use the property as contracted, it does not support finding that appellant *intentionally* dealt with the property as his own. The only evidence we

7. The Commonwealth's theory of the case was that appellant either intended to violate the statute or intended to act as an accomplice for his brother. In deciding this case we address intent in the context of a direct violation of the statute and in the context of accomplice liability.

8. The last witness called by the Commonwealth, one of the district attorney's investigative detectives, did not testify after defense counsel objected to the detective's testimony because of a lack of relevancy. (N.T. at 204–06).

find that may be interpreted to show appellant intentionally dealt with the homeowners' property as his own, was that appellant was paid a salary by Larry Stein. (N.T. at 260, 264, 266–68). We hold that without more, the mere fact that appellant was paid a salary by the company he worked for does not establish proof beyond a reasonable doubt that appellant was intentionally dealing with the homeowners' property as his own.

With respect to the Commonwealth's accomplice theory that appellant knew when he sold the contracts that the company could not and would not perform the work, we again find there is insufficient evidence to prove such knowledge beyond a reasonable doubt. Without such knowledge, we conclude there is inadequate evidence to prove, beyond a reasonable doubt, that appellant had the requisite specific intent to be convicted of theft as an accomplice. We also find this evidence insufficient to convict appellant on the conspiracy charges.

We specifically note that the Commonwealth did not introduce any direct evidence of appellant's intent to deal with the homeowners' property as his own, or of appellant's intent to promote or facilitate his brother's crimes. In his defense, appellant introduced substantial evidence disputing the assertion that he intended to assist his brother in the commission of the crimes, or that he intended to deal with the homeowners' property as his own. Appellant testified that he knew Stein Construction was getting behind on the projects contracted for and that there were some problems with the company. (N.T. at 273–74). He also stated that although he knew his brother was ill, he did not specifically know of Larry's dependency on Dilaudids. (N.T. at 276). Appellant stated that with the increasing backlog of work and the continuing customer complaints, he attempted to push his brother to schedule subcontractors to the worksites. (N.T. at 275). However, because the company was controlled solely by Larry Stein, appellant could not order such work or demand or force his brother to schedule work crews.

During the growing backlog of contracted work, appellant continued to enter into contracts with homeowners for the company. (N.T. at 276–77). Appellant stated that he continued to sell the contracts because he believed the usual seasonal slowdown caused part of the backlog and because he believed his brother would overcome his illness. (N.T. at 276–77). Mark Stein specifically testified that he entered into the contracts for the company fully expecting his brother's company to fulfill the contracts. (N.T. at 283). He never intended or believed the customers would lose their money. *Id.*

Appellant also introduced evidence demonstrating that during the time appellant continued to enter into contracts, the company was simultaneously working on other local contracted job sites. Michael Shimmel, a subcontractor, testified in detail that he was working on Stein Construction contracts through the latter months of 1987 and up until May 1988. (N.T. at 242–43). Frances Toka, a telephone solicitor for Stein Construction, testified that she believed the company had subcontractors working on job sites up until August 1988. (N.T. at 220–21). Moreover, at least four of the Commonwealth's own witnesses testified that Stein Construction had initiated limited work on their homes after entering into contracts with them. *See* (N.T. at 28–30, 45–47, 90–92, 172–74). In fact, the record shows that Stein Construction began work on contracts that had been entered into as late as May and June 1988, just prior to appellant leaving Stein Construction. (N.T. at 27–30, 89–91).

Considering all of the evidence, as we must, and viewing all reasonable and proper inferences in a light most favorable to the Commonwealth, it is still clear that the Commonwealth failed to establish, beyond a reasonable doubt, appellant's intent to deal with the homeowners' property as his own or his intent as an accomplice to promote or facilitate Larry Stein in the commission of the thefts. Substantial and uncontradicted evidence was presented at trial that appellant knew the company was working on contracts,

albeit to a limited extent, during the period appellant continued to enter into contracts for the company. Stein Construction was working on contracts at local worksites up until the time appellant left the company. This evidence creates a reasonable doubt that appellant had the intent to deal with the homeowners' property as his own, or, as an accomplice, had the intent to promote or facilitate his brother in theft. *See Commonwealth v. Austin,* 258 Pa.Super. 461, 470, 393 A.2d 36, 40 (1978) (holding the cumulative effect of the evidence did not support concluding, beyond a reasonable doubt, that the contractor had the " 'conscious object' to violate [the] agreement and deal with the payment as his own").

 Finally, considering appellant's conspiracy conviction, we note the Commonwealth did not introduce any evidence of an agreement by appellant with Larry Stein to aid in the planning or commission of the theft crimes. We recognize that the Commonwealth can establish the existence of an agreement by circumstantial evidence, and need not rely on direct evidence. *Commonwealth v. Derr,* 501 Pa. 446, 449, 462 A.2d 208, 210 (1983). However, it is equally clear that the Commonwealth cannot prove an agreement based upon mere suspicion and conjecture. *Derr,* 501 Pa. at 449, 462 A.2d at 210; *Commonwealth v. Savage,* 388 Pa.Super. 561, 571, 566 A.2d 272, 276 (1989). After reviewing the record, we find a complete lack of any evidence to suggest appellant had an agreement with his brother to aid in the planning or commission of the crimes charged. As such, we conclude the Commonwealth did not prove each element of the conspiracy convictions beyond a reasonable doubt.

The Commonwealth refers to *Commonwealth v. Robichow,* 338 Pa.Super. 348, 487 A.2d 1000 (1985), and *Commonwealth v. Bhojwani,* 242 Pa.Super. 406, 364 A.2d 335 (1976), in support of the argument that sufficient evidence was presented to convict appellant of violating section 3927. The Commonwealth correctly notes that in both *Robichow* and *Bhojwani,* this court affirmed a finding of guilt against

the defendant for violating section 3927. However, unlike the Commonwealth, we find both of these cases to be factually distinct from the situation at bar.

In *Bhojwani* the defendant entered into several contracts to have clothing tailored in Hong Kong for customers. *Bhojwani*, 242 Pa.Super. at 408–409, 364 A.2d at 336. The defendant admitted that he deposited the money given to him for the clothing in his personal bank account. *Id.* The evidence also showed that the defendant then had cashier's checks, payable to himself, drawn on the account, thereby depleting the funds given to him under contract. Moreover, there was no account records evidencing that defendant transferred any of customers' moneys to the Hong Kong clothing manufacturer. *Id.*

In *Robichow* the defendant contractor entered into a contract to make minor repairs to a customer's home. *Robichow*, 338 Pa.Super. at 351, 487 A.2d at 1002. The homeowner advanced $75 for the $135 contract and requested that he be given a receipt for the advance. The defendant refused to sign a receipt for the advance money, and thereafter, did not perform any of the contracted work or return any of the advance money. *Id.* Significantly, the defendant in *Robichow* did not offer any testimony to explain his actions, or to rebut the homeowner's testimony. *Id.*

In both *Bhojwani* and *Robichow* this court affirmed the judgment of sentence under section 3927 and held that the evidence was sufficient to prove beyond a reasonable doubt that, at the *inception* of the contracts, the defendants intended not to perform the contracted obligations. *Robichow*, 338 Pa.Super. at 353, 487 A.2d at 1003; *Bhojwani*, 242 Pa.Super. at 412, 364 A.2d at 338. We find the facts in *Bhojwani* and *Robichow* to be significantly different from those at bar. We note that unlike in *Bhojwani*, appellant at bar did not deposit any of the advance money into his personal account, nor did he deplete the account with personal withdrawals. In fact, appellant Mark Stein had no control or authority over the Stein Construction accounts

into which the homeowners' advance money was deposited. Moreover, unlike the defendant in *Robichow*, appellant Mark Stein did offer extensive testimony to dispute the Commonwealth's evidence of intent.

We also note that in both *Robichow* and *Bhojwani*, the person convicted was the party who directly entered into the contract and took control of the moneys advanced. In the situation at bar, Stein Construction or Larry Stein, as the sole proprietor of the company, was the individual who entered into the contracts and controlled the advance money given by the homeowners. Larry Stein pled guilty to the charges filed against him. In contrast, appellant Mark Stein was only an employee of the contracting party and had no control over the accounts.

■ Where an element of a crime is not established beyond a reasonable doubt, then a verdict of guilt for that crime cannot stand. *Commonwealth v. Frank*, 322 Pa.Super. 6, 11, 468 A.2d 1131, 1134 (1983); *Commonwealth v. Austin*, 258 Pa.Super. at 470–471, 393 A.2d at 40–41. The evidence presented at bar, even when viewed in a light most favorable to the Commonwealth, creates a reasonable doubt that appellant had the conscious object to deal with the homeowners' property as his own, or that appellant intended to promote or agreed to facilitate his brother in the commission of theft. Because we conclude the Commonwealth has not proven each of the elements of the crimes charged, beyond a reasonable doubt, we reverse the trial court's judgment of sentence and order the discharge of appellant Mark Stein.