CHAGARES, Circuit Judge,
dissenting.
I agree with my learned colleagues’ explanation of the legal standards in this case. However, I disagree with the major- *545 tty's application of the law and I therefore respectfully dissent. I would affirm the District Court’s denial of Lorenzo Johnson’s petition for a writ of habeas corpus because the state courts’ rejection of his sufficiency of the evidence claim was not contrary to, or an unreasonable application of, Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Viewing the evidence, as we must, in its totality and in the light most favorable to the Commonwealth, I believe the state court reasonably determined that a rational juror could infer that Johnson had a specific intent to aid Walker in murdering Taraja Williams. Weaving together the testimony of Carla Brown, Gary Miller, Jr., Victoria Doubs, Brian Ramsey, Detective Kevin Duffin, and Aaron Dews, the Commonwealth was able to paint the following picture. On the morning of December 14, 1995, Johnson and Walker, who were always together, woke up in the same house and went with Doubs to the Kentucky Fried Chicken (“KFC”) near the intersection of 14th and Market Streets in Harrisburg, Pennsylvania. Per Doubs’s testimony, Williams approached, and Walker went to confront him about the debt that he owed “us.”[1]
Defiant, Williams told Walker that he would get the money when Williams felt like it and that he was not scared of Walker. A fight ensued, and Williams beat Walker with a broomstick. As a result— and in Johnson?s presence — Walker was laughed at and embarrassed by his peers. In response, Walker furiously and repeatedly stated — again in Johnson’s presence — that he intended to kill Williams.[2]
Upon returning to the area together later that evening, Brown saw Johnson, Walker, and Williams arguing in the Midnight Special bar.[3] After being thrown out of the bar, the three men proceeded in a single-file line down the street, with Walker in front, Williams in the middle, and Johnson in the rear. Walker was wearing a long, leather overcoat and noticeably walking like he had an object (presumably a shotgun) hidden in his overcoat. When they arrived at an alley between the buildings at 1420 and 1422 Market Street, Johnson stood outside the entrance while Walker, followed by Williams, entered the alley. There was testimony from both Brown and *546 Ramsey that Williams did not willingly enter the alley. Upon entering the alley, Walker shot and killed Williams with a shotgun.
The aftermath of the crime is also consistent with Johnson’s guilty mind. Aaron Dews testified that he saw two silhouettes running up the driveway from the direction of the alley. Although he could not make out the silhouettes’ gender, from other evidence it flows more likely than not that the running silhouettes were indeed Johnson and Walker. Brown testified that she passed the alley and upon hearing the gun shot ran up Market Street and cut through another alley to get to Regina Street. Although this is the general direction that the two silhouettes were running, Brown ran through a different alley. Since Williams had been killed and Brown had run through a different alley, a logical inference existed that Johnson and Walker were the “silhouettes” that Dews saw fleeing up the driveway between the buildings at 1420 and 1422 Market Street. Johnson also fled from Detective Duffin the very next afternoon. Finally, there was testimony from Doubs that Johnson’s friend attempted to bribe her into giving false alibi information to Duffin on Johnson’s behalf. All of this post-offense conduct further supports the reasonableness of the state court’s ultimate determination. See Commonwealth v. Harvey, 514 Pa. 531, 526 A.2d 330, 334 (1987) (“It is a well-settled rule of law that if a person has reason to know he is wanted in connection with a crime, and proceeds to flee or conceal himself from the law enforcement authorities, such evasive conduct is evidence of guilt and may form a basis, in connection with other proof, from which guilt may be inferred.”); Commonwealth v. Tinsley, 465 Pa. 329, 350 A.2d 791, 792 (1976) (same).
Johnson has never argued that Walker lacked a specific and premeditated intent to kill Williams. The only issue — whether phrased in terms of specific intent to commit first-degree murder or specific intent to aid in the commission of first-degree murder — is Johnson’s state of mind at the time of the homicide. Piecing together the constituent parts of the Commonwealth’s evidence, I believe that the state court was not unreasonable in finding that a rational jury could properly infer Johnson’s specific intent to aid Walker in the murder.
The majority is correct that although each strand of evidence need not support an inference of guilt by itself, we must consider each strand of evidence as if woven or entwined “to the whole and determine if the totality of the evidence, viewed in a light most favorable to the Commonwealth, establishes criminal intent beyond a reasonable doubt.” Majority Op. 543. I believe, however, that the majority has improperly isolated certain strands of circumstantial evidence to reach its conclusion.
For instance, the majority holds that the mere fact that “Johnson walked with Walker and the victim to an alley” has no evidentiary value. Majority Op. 541. However, the testimony was that Walker, Williams, and Johnson proceeded in a single-file line down the street, with Walker in front (noticeably walking with an object concealed in his overcoat), Williams in the middle, and Johnson in the back. This, of course, occurred within hours of Johnson witnessing Williams beating Walker, resulting in embarrassment and humiliation to Walker, and Walker repeatedly stating that he intended to kill Williams. The single-file line brings to mind an “execution-style” killing, and undercuts any inference that the three might have been proceeding down the alley to do a drug deal or for some other late-night jaunt. Moreover, the manner in which they proceeded down the street demonstrates, more likely than not, that Johnson knew what was *547 coming and was aiding Walker in escorting him and the victim to the place of execution, especially given the fact that the shooting occurred immediately upon entering the alley. Finally, the coercive nature of the single-file line is corroborated by Brian Ramsey’s testimony that Williams was “forced” in the alley. Johnson’s participation in the escorting helps demonstrate concert between him and Walker. I believe the nature of the procession itself, in conjunction with other evidence, is helpful in demonstrating Johnson’s specific intent.
In addition, the majority discounts as speculation any inference that Johnson’s presence at the entrance to the alley where Walker killed Williams demonstrated Johnson’s intent. Taken in isolation, Johnson’s mere presence at the scene of a crime cannot be a basis for accomplice liability. See Commonwealth v. Murphy, 577 Pa. 275, 844 A.2d 1228, 1238 (2004). But in conjunction with other evidence, it was certainly reasonable for the state court to find that Johnson’s presence outside the alley — taken together with the evidence of his prior knowledge of Walker’s intent to kill Williams, the evidence that he had just participated in an argument with Williams, and the single-file procession to the alley — could be viewed by a rational juror as standing guard outside the alley while Walker consummated the murder.[4] See Commonwealth v. Ulatoski, 472 Pa. 53, 371 A.2d 186, 190 (1977) (“[Ejvidence concerning the previous relations between a defendant and a homicide victim is relevant and admissible for the purpose of proving ill will, motive, or malice. Evidence of prior occurrences in which the accused threatened, assaulted, or quarreled with the decedent may be admissible for this purpose.” (footnote omitted)). I submit that it was reasonable to conclude that Walker’s stance outside the alley demonstrated both his specific intent to have Williams killed and his attempt to aid Walker in doing so.
When considered in its totality, the evidence supports the inference that Johnson was assisting Walker in escorting Williams to the alley to be killed: a single-file procession, immediately followed by Johnson taking a position just outside the alley, immediately followed by the murder with a shotgun, immediately followed by Johnson and Walker fleeing from the scene. Together with the evidence concerning the trio’s interactions outside the KFC and in the Midnight Special bar, I believe the ultimate inference — that Johnson acted with a specific intent to facilitate a first-degree murder — flows logically and reasonably from the evidence. Accordingly, I would hold that the state courts’ rejection of Johnson’s sufficiency of the evidence claim was not contrary to, or an unreasonable application of, Jackson.[5]
*548 For the above reasons, I respectfully dissent, and would affirm the judgment of the District Court.

.Emphasizing the ambiguity of Doubs's statement that Williams owed a debt to "us,” Johnson argues that an inference that Williams owed a debt to Walker, Doubs, and Johnson (as opposed to only Walker and Doubs) was impermissible because the trial court made a finding that the debt was owed only to Walker. Because, he says, it was just as likely that Doubs's reference to "us” was to only herself and Walker, an inference that the debt was owed to Johnson as well is impermissible. The Commonwealth is ultimately correct in its argument, however, that the debate does not much matter: whether Williams owed money to all three or only to Doubs and Walker is beside the point because the testimony concerning the debt provided Johnson with knowledge of Walker’s motive to kill Williams. Together with other evidence discussed in this opinion, I believe that it was reasonable for the state court to find that Johnson’s intent to aid Walker can be inferred from his prior knowledge combined with his actions at the time of the murder.

. Given this testimony, it is perplexing that Johnson can argue that "[ejntirely missing from the Commonwealth’s proof is any evidence that [he] knew that Walker planned to kill Williams in advance of it happening.” Johnson Br. 24, 30-31. Quite to the contrary, the most logical inference from Walker’s statement (in Johnson’s presence) that he planned to kill Williams is that Johnson knew very well that Walker had such intentions.

. The majority posits that because Brown could not hear what was being said during the argument, no inferences may be drawn therefrom. I disagree. Certainly one may perceive individuals engaged in an argument without knowing the actual content of the argument.

. Whether there was a need for a lookout, or whether Johnson’s effectiveness as one was only slight, however, is not the point. See Murphy, 844 A.2d at 1234 (“There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.”). In any event, Brown’s testimony strongly implies that Johnson was standing outside of the alley not by happenstance, but with a specific purpose. See Joint Appendix ("JA”) 200, 203 ("But one thing for sure, they walked him in that alley.... All I know is who walked him in that alley and who stood in front of the alley.”). She also stated that she was scared that “they'd, kill me too," further implying that Johnson and Walker were acting collectively. JA 168 (emphasis added). Given the other evidence, it seems perfectly reasonable for one to conclude more likely than not that Johnson's not-so-fortuitous stance outside the alley was an overt attempt to aid in the crime.

. Johnson did not advance separate arguments with regarding his criminal conspiracy conviction, although he did mention there *548 was a lack of evidence "upon which a rational jury could have found that he possessed specific intent to kill, as required for the homicide or criminal conspiracy convictions.” See Johnson Br. 4. Perhaps this was because "the intent’ element required to be proven by the Commonwealth is the same for accomplice liability as for conspiracy.” Commonwealth v. Stein, 401 Pa.Super. 518, 585 A.2d 1048, 1050 n. 6 (1991). As a result, the above discussion applies equally to Johnson’s murder and conspiracy convictions.