28 A.3d 898

COMMONWEALTH of Pennsylvania, Appellee

v.

Walter J. HART, III, Appellant.

Supreme Court of Pennsylvania.

Argued March 8, 2011.

Decided Sept. 28, 2011.

532

Mary Elizabeth Welch, Media, for Walter J. Hart, III.

George Michael Green, Delaware County District Attorney's Office, Jay William Hannon, Andrew S. Kovach, Media, Delaware County District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice TODD.

In this appeal, we consider whether the mere offer of an automobile ride to a child constitutes an attempt to "lure" the child under Section 2910 of Pennsylvania's Criminal Code, entitled "Luring a child into a motor vehicle or structure." [1] After careful review, we conclude that an attempt to "lure" does not include the action of simply extending an offer of an automobile ride to a child, when it is unaccompanied by any other enticement or inducement for the child to enter the motor vehicle. Consequently, we reverse the conviction of Appellant, Walter J. Hart III, for attempted luring.

The following facts were adduced at Appellant's trial. In early 2006, Appellant, then 35-years-of-age, was residing in a residential neighborhood in Haverford Township, Delaware County, where he had lived his entire life. Appellant was

---

1. 18 Pa.C.S.A. § 2910.

taking college classes at this time and working part time for a security firm. N.T. Trial, 9/26/2007, at 108, 128. On the morning of February 28, 2006, a cold and overcast day, two boys—ages 13 and 12—who lived on an adjoining street to the one on which Appellant's house was located, were walking from their homes, via the nearby thoroughfare of Manoa Road, to the middle school they attended. Both testified that, as they walked along this street, Appellant drove up beside them and offered them both a ride to school or to the local "WAWA" grocery store. N.T. Trial, 9/27/07, at 16, 37–39. This grocery store, the Haverford Township police station, public library, and middle school all were located nearby within a short distance of each other along Darby Road which intersects with Manoa Road. *Id.* at 37, 115–117. The boys declined the offer, and Appellant drove off without any further conversation with them.[2] N.T. Trial, 9/26/2007, at 18, 38.

Two days later, on the morning of March 2, 2006, a light rain was falling in the Haverford area, and the same two boys were again walking to school. *Id.* at 39. Appellant testified that between 7:30 and 8:00 a.m. that morning, he left home in his truck with the intention of getting coffee and breakfast at the WAWA grocery store before beginning a research project for his college public speaking class at the library. *Id.* at 108–109, 115. As Appellant approached the heavily congested intersection of Naylor's Run Road and Manoa Road, he recalled observing the two boys standing near the intersection, and, according to Appellant, because of their age and the fact they were carrying backpacks, he believed they were from his neighborhood and on their way to school. Appellant related that, because it had been raining, he offered them a ride to school, or, alternatively, at least as far as the grocery store at which he intended to stop. *Id.* at 112–113. In Appellant's view, since he was going in the direction of the school anyway, he thought he was merely doing a "kind thing" by making the

2. Appellant, who suffered serious head injuries in an automobile accident more than a decade and a half earlier in 1992, which left him comatose for nearly a month and with a lifetime cognitive disability for which he received social security benefits, testified at trial that he could not recall having any conversation with the students that morning.

offer, and, since they all lived in the same neighborhood, he did not believe the boys' parents would have objected. *Id.* at 127.[3]

Both boys recounted that they turned down Appellant's offer of a ride—after which Appellant asked if they were sure. *Id.* at 20. The boys declined for a second time, and Appellant drove off without any further communication with them. *Id.* at 20, 38. Appellant proceeded to the grocery store, then to the library, and finally returned home, at which point he began working on other school assignments. *Id.* at 115–117.

Following their latest interaction with Appellant, one of the boys obtained the license plate number of Appellant's truck; whereupon they both walked to the police station, which was located less than a block from where they had spoken with Appellant, and reported the conversation to police. *Id.* at 40, 43, 59. Later that same morning, after determining Appellant's address from the license plate information, a Haverford Township police officer, Thomas Long, drove to Appellant's house, and spoke with Appellant. *Id.* at 52. According to Officer Long, Appellant did not appear to have any knowledge of why the officer was questioning him. *Id.* at 60. Appellant admitted to Officer Long that he offered the two boys a ride, and Appellant voluntarily agreed to Officer Long's request to accompany him to the police station to speak further with another investigator. *Id.* at 56.

Once at the Haverford Township police station, Appellant spoke with Officer Goodman and repeated what he told Officer Long. Appellant agreed to memorialize this statement in writing, and he handwrote the following: "Two boys walking to school, and I asked if wanted [sic] a ride part of the way, Wawa. Boys said no. I said okay, and left." *Id.* at 70.

3. Appellant testified that, as a result of the terrible trauma of his automobile accident, he believed he was given a "second chance" and developed a renewed religious faith. *Id.* at 105. As part of his commitment to helping others, he testified he would routinely give rides to a wide variety of people of all ages. *Id.* at 107, 125. Nine other people, including Appellant's girlfriend, attested at trial to his reputation in the community for being a "Good Samaritan" and being a person of peaceable character.

Officer Goodman testified that Appellant looked surprised whenever the officer informed him that he had potentially violated a statute by his actions. *Id.* at 81. After driving him back to his home, the police asked Appellant if they could search his truck, and he consented. The search yielded nothing of a criminal or suspicious nature. N.T. at 77, 82.

Appellant subsequently was charged with four counts of harassment, stalking, and attempted luring of a child into a motor vehicle. After receiving a telephone call informing him of the charges, Appellant turned himself in. He proceeded to a bench trial before the Honorable Ann A. Osborne on September 26, 2007. At the conclusion of the trial, Judge Osborne acquitted Appellant of the offenses of stalking and harassment. With respect to the offenses of attempted luring of a child into a motor vehicle, Judge Osborne expressly stated she found no evidence that Appellant had any intent to harm the children, and that she believed "the circumstances show no reason to believe that this defendant had any evil or improper intent in doing what he did." N.T. Trial, 10/2/07, at 4–5. However, on the sole basis of Appellant's offer of the rides, she convicted him on all four counts of attempted luring. The trial court found that "[Appellant's] offer of a ride to the victims is sufficient to constitute an attempt to 'lure.'" Trial Court Opinion, 6/26/08, at 6. The trial court subsequently sentenced Appellant to 18 months' probation. As an automatic result of his convictions, Appellant is now statutorily mandated to register for ten years as a sex offender under Megan's Law, 42 Pa.C.S.A. § 9795.1(a)(1).

Appellant filed a counseled appeal to the Superior Court, arguing that the evidence was insufficient as a matter of law to sustain his conviction, because his offer of a ride to the children, by itself, did not constitute a "lure" or an attempt to "lure," given that he did not offer the children any enticement to get into his car, nor did he command or otherwise threaten them. Appellant also argued that he had no ill intent in offering the children a ride, but, rather, was merely acting as a "disabled Good Samaritan." *Id.*

A three judge panel of the Superior Court affirmed Appellant's conviction in an unpublished memorandum opinion. *Commonwealth v. Hart*, 285 EDA 2008, 970 A.2d 468 (Pa.Super. filed February 5, 2009). In its disposition, the Superior Court relied on its earlier published decision in *Commonwealth v. Figueroa*, 436 Pa.Super. 569, 648 A.2d 555 (1994), discussed at greater length *infra*, which held that a mere invitation to a child for a ride to school or to a bus stop constituted the crime of luring of a child into a motor vehicle under the meaning of Section 2910. Thus, the court found the evidence of Appellant's offers of rides to be sufficient to sustain his convictions. In rendering its decision, the court did not discuss its prior decision in *Commonwealth v. Adamo*, 431 Pa.Super. 529, 637 A.2d 302 (1994), which held that some additional enticement for the entry of the child into the vehicle, beyond the offer of the ride itself, was necessary in order for the offeror's conduct to constitute a "lure."

Appellant, proceeding *pro se*, sought allowance of appeal from our Court, challenging the sufficiency of the evidence to sustain his conviction. We granted allowance of appeal to consider the following question:

> Whether a person who offers a child a ride without previously obtaining the permission of a parent of the child, but who otherwise lacks criminal intent to harm the child, may be convicted of luring a child into a motor vehicle under 18 Pa.C.S.A. § 2910?

*Commonwealth v. Hart*, 605 Pa. 406, 990 A.2d 724 (2010).[4]

In our order granting allowance of appeal, we additionally directed the parties to address the applicability of the Superi-

4. We respectfully disagree with the suggestion in the Concurring and Dissenting Opinion and in the Concurring Opinion that our consideration of the proper definition of the term "lure," as used in this statute, is beyond the scope of the question we accepted for consideration, as Appellant's request for review by our court was based on his specific contention that his conduct did not constitute an attempt to lure the boys into his vehicle. *See Appellant's Petition for Allowance of Appeal*, 3/11/09, at 6 ("In a decision that is contrary to the Due Process Clause of the United States Constitution and United States Supreme Court precedent ... the Superior Court has affirmed a judgment of sentence of attempting to 'lure' a child into a motor vehicle even though the

or Court decisions of *Adamo* and *Figueroa* to the resolution of this question, and, also, directed the appointment of appellate counsel for Appellant, if he so desired. *Id.* Counsel was appointed who filed a brief and made oral argument on Appellant's behalf.

We preface our analysis of this issue with a recitation of Section 2910, as well as a discussion of the Superior Court panel decisions of *Adamo* and *Figueroa*, as a full examination of the court's respective interpretation of the term "lure" in each decision is necessary to place the parties' arguments presently before us in their proper context.

The text of Section 2910 provides:

### § 2910. Luring a child into a motor vehicle or structure

(a) **Offense.**—Unless the circumstances reasonably indicate that the child is in need of assistance, a person who lures or attempts to lure a child into a motor vehicle or structure without the consent, express or implied, of the child's parent or guardian commits a misdemeanor of the first degree.

(b) **Affirmative defense.**—It shall be an affirmative defense to a prosecution under this section that the person lured or attempted to lure the child into the structure for a lawful purpose.

Commonwealth failed to prove beyond a reasonable doubt that any 'luring' occurred.) Consequently, our grant of review requires determining whether the evidence was legally sufficient for the Commonwealth to have proven the offense of attempted luring beyond a reasonable doubt. This determination, by necessity, includes ascertaining whether Appellant's conduct, as a matter of law, constituted an attempt to "lure" as that term is used in 18 Pa.C.S.A. § 2910. *See e.g. Commonwealth v. Graham*, 607 Pa. 580, 586, 9 A.3d 196, 199 (2010) (in considering whether evidence was sufficient to convict defendant of burglary graded as a felony of the first degree, it was necessary to determine whether a house which was under construction met the burglary statute's definition of the a structure which was "adapted for overnight accommodation."); *Commonwealth v. Van Nest*, 517 Pa. 44, 53, 534 A.2d 473, 477 (1987) (in determining whether evidence was sufficient beyond a reasonable doubt to convict tax collector of the offense of theft for failure to make required disposition of funds, it was necessary to interpret the meaning of the term "shortage" as used by the legislature in the statute).

**(c) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Motor vehicle." Every self-propelled device in, upon or by which any person or property is or may be transported or drawn on a public highway.

"Structure." A house, apartment building, shop, warehouse, barn, building, vessel, railroad car, cargo container, house car, trailer, trailer coach, camper, mine, floating home or other enclosed structure capable of holding a child, which is not open to the general public.

18 Pa.C.S.A. § 2910.

Notably, neither the present version of Section 2910, nor its original incarnation,[5] defines the term "lure." In *Adamo*—a case which involved a prosecution under the prior statute—the defendant was convicted of attempting to lure a child into his motor vehicle for the act of offering the child $1,000 for a half an hour's "work." *Adamo*, 637 A.2d at 305. When the child asked what it was he would be doing to earn the $1,000, the defendant replied that he would not disclose the nature of the work unless the child accompanied the defendant to the car. The defendant admonished the child not to say anything to anyone, even if he declined to go to the car, because of the defendant's fear he would "get in trouble" since the child was a minor. *Adamo*, 637 A.2d at 306. After the child reported the incident to his mother, the defendant was arrested, charged, and convicted of violating Section 2910.

On appeal to the Superior Court, the defendant presented a number of challenges to his conviction, including constitutional challenges to Section 2910 based on his contentions that the statute was both void for vagueness and facially overbroad. The court rejected both challenges. The court determined

---

**5.** **§ 2910. Luring a child into a motor vehicle**
A person who lures a child into a motor vehicle without the consent, express or implied, of the child's parent or guardian, unless the circumstances reasonably indicate that the child is in need of assistance, commits a misdemeanor of the first degree.
18 Pa.C.S.A. § 2910 (enacted 2/2/1990, amended 1/9/2006).

that the defendant had waived any claim of the statute's facial invalidity due to deficient argument in his brief, and, also, further concluded that Section 2910 was not vague in its application to the defendant's particular conduct, since his statements to the victim indicated that he understood and appreciated that his act of offering money for the victim to come to his car was proscribed by the statute.

With respect to his claim that Section 2910 was overbroad, the defendant argued that the statute chilled the exercise of First Amendment rights by criminalizing innocent offers of a ride to an adolescent, such as those made by a friend or neighbor, any time such offers were extended without first obtaining parental consent. The court rejected that claim, however, construing Section 2910 to be "inapplicable" to such situations because such offers are not "accompanied by any ... inducement." *Adamo*, 637 A.2d at 307. The court reasoned:

These simple offers do not involve a "lure." To "lure," *inter alia*, is defined as: to tempt by pleasure or gain. *Webster's New International Dictionary* 1347 (3d ed.1976).

Where [the defendant] attempts to show that the Commonwealth has failed to establish a "lure," he misses the point. For this intended victim, the lure was the offer of the one thousand dollars, not the actual money; for a younger child the lure might be a lollypop or a hamburger at McDonald's. For centuries people have used the prospect of pleasure or financial gain to "lure" others into places, situations and investments without producing a single dollar of currency or a promised treat. On these facts, we determine that [the defendant] attempted to "lure" his intended victim. The other situations [the defendant] describes would not fall within the ambit of Section 2910. There is no lure, no promise of pleasure, no enticement nor financial gain involved.

*Adamo*, 637 A.2d at 307.

However, in its subsequent *Figueroa* decision, the Superior Court ostensibly embraced a more expansive, and seemingly

contrary, definition of the term "lure". In *Figueroa,* three children were walking on the sidewalk in single-file to their bus stop on the morning after a heavy snowstorm when the defendant pulled out from the driveway of the children's neighbor, drove up alongside the last girl in line, and asked if she would like a ride to school, whereupon she refused. The defendant then pulled his car forward and asked the first girl in line if she would like a ride to school, and she too declined. After these refusals, the defendant entered another nearby driveway, turned around, and headed in the opposite direction from which the children were walking.

The defendant was later arrested, tried, and convicted, after a non-jury trial, of the offense of luring.[6] In convicting the defendant, the trial court reasoned that Section 2910 was a strict liability statute and that violation of any of its provisions was sufficient to convict, regardless of motive.

On appeal to the Superior Court, the defendant challenged the sufficiency of the evidence to sustain his conviction and, as the defendant had done in *Adamo,* contended that the statute was constitutionally infirm for vagueness and overbreadth. With respect to the defendant's sufficiency challenge, the court considered it to be a claim, based on *Adamo,* that Section 2910 implicitly requires that a person possess an intent to do harm in order to be convicted thereunder. The. *Figueroa* court acknowledged the *Adamo* decision, but rejected the defendant's argument that it required any showing of an intent to harm for a conviction. The court conceded that the offer in *Adamo* could have been "an invitation to sexual misconduct," *Figueroa,* 648 A.2d at 557, but it determined that the *Adamo* court based its decision not on that fact, but, rather, on a strict reading of the statute and found that intent to harm was not an express requirement of Section 2910. However, the *Figueroa* court rebuffed the notion that Section 2910 was a strict liability statute, and found that, because the statute did not set forth a specific *mens rea* requirement, the

6. The defendant was convicted under the predecessor version of Section 2910, set forth *supra,* at n. 5.

default culpability standard was that set forth in Section 302(c) of the Crimes Code which provides:

> When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto.

18 Pa.C.S.A. § 302(c).

The *Figueroa* court additionally concluded the *Adamo* court's "inducement" requirement was met, deeming the offer of a ride to school on a snowy, icy day to meet this requirement, since, in the *Figueroa* court's view, it could have been regarded by the children as a "favorable enticement." *Figueroa*, 648 A.2d at 557. The court therefore concluded that the defendant's knowing conduct of "inviting the children into his car with a promise of a ride to school or the bus stop . . . is sufficient to meet the prohibitions of the statute." *Figueroa*, 648 A.2d at 557–558 (emphasis supplied). The court reasoned, "[i]t is a perfectly reasonable and efficacious enactment for the legislature to declare that an adult should not, under penalty of law, invite a child (without the parent's consent which may be implied) into his car." *Id.* at 558. The court explained, "[v]iewing this crime as a threshold prophylactic rule for the terrible crime of kidnapping, we conclude that it is a legitimate exercise of the legislature's discretion, to prohibit persons from offering rides to children under any invitational pretext." *Id.*

Thus, under the *Figueroa* decision, the mere extension of an invitation to a child for an automobile ride constituted a lure, and, thus, no additional enticement or inducement for the child to enter the car beyond the offer of the ride itself was required. As a result in *Figueroa* and *Adamo*, the Superior Court has issued seemingly conflicting interpretations of the term "lure."

With this background in mind, we now consider the parties' arguments. Appellant first points out that the trial court convicted him based solely on his offer of a ride to the boys, and, in so doing, specifically relied on *Figueroa's* holding that

the mere act of offering a ride to students on the day after a snowstorm constituted attempted luring. In fact, the trial court herein expressly analogized the circumstances of his case to those of *Figueroa*, based on the fact that his second offer of a ride was made while it was slightly raining, which, in the trial court's view, functioned like the snow in *Figueroa* to make the offer "even more enticing." *See* Appellant's Brief at 13 (quoting Trial Court Opinion, 6/26/08, at 6–7).

Appellant urges that the term "lure" must be clarified so that the public can know what conduct is prohibited. He underscores the contradiction between the *Adamo* and *Figueroa* courts' definition of the term, pointing out that the *Adamo* court interpreted it to be an offer of something pleasurable or financially rewarding, whereas the *Figueroa* court found that the mere offer of a ride in inclement weather conditions was sufficient. In this case, Appellant contends it was the simple prospect of getting out of a drizzle that the lower courts determined to be a sufficient enticement so as to constitute a "lure." Appellant posits that there seems, then, to be no circumstance under which an adult, who possesses good intentions in offering a minor a ride, such as making transportation easier, faster, or removing the child from the influence of the elements, can make such an offer without violating the statute. Appellant suggests that this type of situation can occur in any neighborhood where an adult offers a child who lives there a ride to avoid inclement weather, believing that parental consent to do so would be implied from the fact the adult knows the child from seeing the child in the yard or at a bus stop and, also knows the child's parents from similar interactions. However, Appellant acknowledges that the current interpretation of this statute would not allow such a belief.

Appellant notes that society rightly imposes strict liability for certain inherently dangerous behaviors such as drunk driving or driving a car exceedingly fast, and criminal statutes pertaining to these behaviors give people fair notice of exactly what conduct is proscribed. By contrast, he asserts there is nothing inherently dangerous or harmful in offering a child a

ride with good intent. However, Appellant maintains that, under *Figueroa*, a mother who sees that her daughter's friend missed the school bus cannot offer a ride; a senior citizen cannot extend a helping hand to a neighbor's son caught in a driving rain storm; nor can a father picking up his daughter offer her friend a ride home from a school activity when she is stranded after dark, without potential criminal liability.[7]

The Commonwealth responds by characterizing the central issue in this case as a question of statutory interpretation, not one of constitutionality. The Commonwealth acknowledges that Section 2910 is a penal statute and, hence, must be strictly construed; however, the Commonwealth notes that we are not required to give the words of this statute their narrowest meaning, nor disregard what is the evident legislative intent of the statute. The Commonwealth proffers that when the plain meaning of the words of Section 2910 are considered they do not require any proof of an individual's intent to harm in order for the individual to be convicted. Rather, in the Commonwealth's view, all that the statute requires is that the Commonwealth prove a defendant: "(1) lured or attempted to lure a child; (2) into a vehicle or structure; (3) without the express or implied permission of the child's parent or guardian; and (4) the circumstances did not reasonably indicate that the child was in need of assistance." Commonwealth's Brief at 11. However, the Commonwealth suggests that the statute does incorporate the default *mens rea* requirement of 18 Pa.C.S.A. § 302(c), *supra*, and, as a result, a defendant will have the requisite culpability to be convicted if he or she acts "intentionally, knowingly or reck-

7. Additionally, Appellant argues that Section 2910 is unconstitutional as it is both vague and overbroad. He contends that the statute is vague because it "provides no clue to the public or the Courts as to what conduct is prohibited under the statute," since the statute does not define either the term lure, or the phrase "unless the circumstances reasonably indicate that the child is in need of assistance," nor does the statute contain any guidance as to how it can be determined if a parent or guardian's consent to giving the child a ride can be implied. Appellant's Brief at 14. Furthermore, Appellant asserts Section 2910 is overbroad because it punishes a substantial number of innocent people who have no criminal intent in offering a ride and who are engaging in socially desirable and protected conduct.

lessly." Commonwealth's Brief at 12 (quoting 18 Pa.C.S.A. § 302(c)).

The Commonwealth propounds that the Superior Court, in *Adamo* and *Figueroa*, properly construed Section 2910 in accordance with these principles. In neither case, according to the Commonwealth, did the Superior Court interpret this section to require an intent to harm the child. Instead, the Commonwealth argues that the statute was read to require "only that a defendant intend to lure a child, not harm the child once lured." *Id.* at 14. Thus, the Commonwealth advances the contention that, in the absence of an emergency or parental consent, "an invitation into a vehicle with the intent that the child actually enters [sic] the vehicle suffices to meet the prohibitions of the statute." *Id.* The Commonwealth maintains that the legislature, in drafting Section 2910, expressly declined to include an "intent to harm" element in the statute. Thus, it claims that this omission, as well as the legislature's specific recognition of a defense to luring a child into a structure under Section 2910(b) based on the action having been undertaken for a lawful purpose, and its corresponding failure to extend that same defense to luring a child into a motor vehicle under Section 2910(a), demonstrates that criminalization of any act of luring children into motor vehicles without parental consent or an emergency is exactly what the legislature intended. Hence, the Commonwealth contends that adding an intent to harm element to the crime statute would be contrary to the express intentions of the legislature.

We begin our analysis by observing, as the Commonwealth correctly discerns, our grant of allowance of appeal did not include the question of whether Section 2910 is unconstitutional on the grounds that it is either void for vagueness, or overbroad. Appellant sought review from our Court for his claim that the evidence was insufficient to sustain his conviction for violating Section 2910 based on his contention that he did not engage in conduct that constituted "luring." We granted allowance of appeal to consider only this particular challenge.

 In reviewing a claim that the evidence is insufficient to support a conviction, we examine the evidence in a light most favorable to the Commonwealth and grant it, as verdict winner, all reasonable inferences therefrom. *Commonwealth v. Eichinger*, 591 Pa. 1, 16, 915 A.2d 1122, 1130 (2007). The evidence, so viewed, will be deemed sufficient to sustain a conviction if it establishes each element of the offense beyond a reasonable doubt. *Commonwealth v. Wright*, 599 Pa. 270, 290, 961 A.2d 119, 130 (2008).

 In interpreting Section 2910, as with any statute, our standard of review is *de novo. Commonwealth v. McClintic*, 589 Pa. 465, 472, 909 A.2d 1241, 1245 (2006). Consequently, we are not bound by the lower court's conclusions regarding the proper meaning of the applicable provisions of this statute. *See Commonwealth v. Kyle*, 582 Pa. 624, 632, 874 A.2d 12, 17 (2005) (holding that our Court owes no duty of deference to the legal conclusions of lower courts regarding an issue of statutory construction). Our interpretation is guided by the polestar principles set forth in the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq.* which has as its paramount tenet that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a).

 As we have often recognized, "[t]he General Assembly's intent is best expressed through the plain language of the statute." *Commonwealth v. Brown*, 603 Pa. 31, 39, 981 A.2d 893, 897 (2009); *Commonwealth v. McCoy*, 599 Pa. 599, 609, 962 A.2d 1160, 1166 (2009). Therefore, when the terms of a statute are clear and unambiguous, they will be given effect consistent with their plain and common meaning. 1 Pa.C.S.A. § 1921(b); *Commonwealth v. Kelley*, 569 Pa. 179, 184, 801 A.2d 551, 554 (2002). This means ascribing to the particular words and phrases the definitions which they have acquired through their common and approved usage. 1 Pa.C.S.A. § 1903. It is only in instances where the words of a statute are not explicit, or they are ambiguous, is there need to resort to consideration of the factors in aid of construction enumerat-

ed in 1 Pa.C.S.A. § 1921(c). *McCoy,* 599 Pa. at 610, 962 A.2d at 1166; *Commonwealth v. Fithian,* 599 Pa. 180, 194, 961 A.2d 66, 74 (2008); *see also* 1 Pa.C.S.A. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

■■■■ Concomitant with these considerations, the Statutory Construction Act also sets forth certain presumptions regarding the General Assembly's enactment of statutes which are to be applied when attempting to ascertain its legislative intent. In particular, when interpreting a statutory provision we must presume that the legislature: does not intend a result that is unreasonable, absurd, or impossible of execution, 1 Pa.C.S.A. § 1922(1); and intends the entirety of the statute to be certain, 1 Pa.C.S.A. § 1922(2). Additionally, since Section 2910 is a penal statute, it must be strictly construed. 1 Pa.C.S.A. § 1928(b)(1). However, this principle does not require that our Court give the words of a statute their "narrowest possible meaning," nor does it "override the 'general principle that the words of a statute must be construed according to their common and approved usage.'" *McCoy,* 599 Pa. at 614, 962 A.2d at 1168 (quoting *Commonwealth v. Booth,* 564 Pa. 228, 234, 766 A.2d 843, 846 (2001)); *see also* 18 Pa.C.S.A. § 105 (the provisions of the Crimes Code are to "be construed according to the fair import of their terms"). Rather, "where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt." *Brown,* 603 Pa. at 39, 981 A.2d at 898 (quoting *Booth,* 564 Pa. at 234, 766 A.2d at 846).

■■■■ With these principles in mind, we examine the text of Section 2910 which sets forth three requirements the Commonwealth must establish beyond a reasonable doubt to convict an individual of the offense of attempted luring of a child into a motor vehicle: (1) the individual attempted to lure a child into a motor vehicle; (2) without the express or implied consent of the child's parent or guardian; and (3) under

circumstances which did not reasonably indicate the child is in need of assistance.

■ In the present case, the only contested element of this offense is whether Appellant's offers of rides to the boys constituted an attempt to "lure" them into his vehicle. Resolution of this pivotal question is, thus, dependent on the meaning of the term "lure." As the legislature did not define this term, its common and approved usage may be ascertained by examining its dictionary definition. *See Fogle v. Malvern Courts, Inc.,* 554 Pa. 633, 637, 722 A.2d 680, 682 (1999) (approving of dictionaries being used as source material for determining the common and approved usage of a term); *Kelley,* 569 Pa. at 186, 801 A.2d at 555 (relying on dictionary to determine plain meaning and ordinary usage of term "intercourse" as used in Section 3101 of the Crimes Code); *Commonwealth v. Johnson,* 542 Pa. 568, 669 A.2d 315 (1995) (using dictionary to ascertain plain meaning of the term "jurisdictional").

■ The most commonly accepted definition of "lure" when used as a verb is "to tempt with a promise of pleasure or gain." *Webster's Third New International Dictionary,* 1347 (3d. ed.1986). Further, "lure suggests an irresistible force, as desire, greed, curiosity, etc. in attracting someone, esp[ecially] to something harmful or evil." *Webster's New World Dictionary,* 806 (3d. College Edition 1988); *see also American Heritage Dictionary of the English Language,* 747 (2d. College Edition 1982) (defining lure to mean "[t]o attract by wiles or temptation; entice" and explaining "lure [and its synonymous verbs, entice, inveigle, decoy, tempt, or seduce] refer to leading or attempting to lead a person from his course, usually into harm or wrong, by exerting a strong attraction. *Lure* strongly implies capture by calculated and deliberate means."). Necessarily, then, we determine that a "lure" involves the making of a promise of pleasure or gain, the furnishing of a temptation or enticement, or the performance of some other affirmative act calculated to strongly induce another individual

to take a particular action, usually and most often likely to result in his or her harm.

By contrast, the acts of merely extending a plain invitation, or making a neutral offer to another person, which are unaccompanied by any inducement intended or designed to increase the probability that the person will accept, do not, in their most common understanding, constitute endeavors to "lure." *See American Heritage Dictionary, supra,* at 675 (principally defining the verb "invite" as "[t]o request the presence") and *Webster's Third International, supra,* at 1566 (primarily construing the verb "offer" as "to present for acceptance or rejection"). Such acts simply do not involve the additional and extra element of powerful persuasion designed to influence the person to take action, which is the *sine qua non* of a lure. *See Adamo,* 637 A.2d at 307 (holding that a simple offer of a ride by a friend or neighbor does not constitute a "lure" as that term is usually defined, as the offer is not accompanied by an inducement such as a "promise of pleasure," "an enticement," or prospect of "financial gain").

 Therefore, as the legislature specifically chose to use the term "lure" in Section 2910, not alternative words such as "invite" or "offer entry," and because this is a penal statute which we must strictly construe, it is only that particular and specific conduct meeting the definition of a "lure" which this statute properly may be interpreted to criminally prohibit. Consistent with the plain and unambiguous meaning of the term "lure," we therefore hold that an attempt to lure under Section 2910 does not occur upon the mere offer of a ride in a motor vehicle to a child, but, rather, involves only situations where a child is provided a further enticement or inducement to enter the vehicle, in addition to the offer of the ride, particularly under such circumstances which suggest the child is being led into a potentially harmful situation. As the Superior Court recognized in *Adamo,* this enticement or inducement may be the promise of a pleasurable reward for entry into the vehicle such as receiving money or a treat such as candy or ice cream. Likewise, a similar attractive temptation could be created with the promise of the opportunity for

the child to view an object of interest like a toy, a game, or a puppy. The enticement or inducement need not necessarily be express, but could also arise where the enticement and inducement is evident from the circumstances accompanying the making of the offer.

Conversely, as the Superior Court also has recognized, an enticement or inducement may take the form of a directive or a command to a child to enter a car, which suggests deleterious consequences to the child if he or she does not obey. In *Commonwealth v. Nanorta*, 742 A.2d 176 (Pa.Super.1999), the defendant was convicted of attempted luring based on his act of ordering a ten-year-old female he observed bicycling by herself along the street to "get in my car." *Id.* at 177. The court affirmed the defendant's conviction and adopted the trial court's reasoning that the command contained an implied promise that the child would avoid an unpleasant consequence if she complied. Thus, both courts viewed the prospect of relief from a prospective adverse outcome to be a sufficient inducement for the child to go along with the command, and, hence, brought it within the ambit of an attempted lure. Such an interpretation is consistent with the plain meaning of the term "lure," because a brazen order to a child to enter a vehicle made by a stranger creates a strong fear-based incentive for the child to follow that particular course of action, as he or she subjectively may believe that is the only way to avoid harm. For that reason, such conduct is also proscribed by Section 2910.[8]

8. We disagree with the inference the Concurring and Dissenting Opinion draws from the General Assembly's response to our decision in *Commonwealth v. Tate*, 572 Pa. 411, 816 A.2d 1097 (2003). *See* Concurring and Dissenting Opinion at 556–58, 28 A.3d at 913–15. In that case the defendant told a young girl who was walking home from school to "get in the car." *Id.* at 412, 816 A.2d 1097. The defendant was convicted of luring under the version of Section 2910 in effect at the time, *see supra* at n. 5. On appeal, he did not raise the issue of whether his conduct of commanding the child to enter the car constituted luring within the meaning of Section 2910. Instead, he contended that since the child did not get into the car he was not guilty of violating Section 2910 because the statute as it then existed did not include the offense of attempting to lure a child into a motor vehicle. Our Court agreed that the defendant did not lure the child into the car and, at

 We agree with the Commonwealth that there is no express requirement for a conviction under Section 2910 that the Commonwealth also separately prove that a person who attempts to lure a child into an automobile did so with the purpose of harming the child. Hence, we will not rewrite this statute to supply such an extra component to the Commonwealth's burden of proof. "It is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Commonwealth v. Wright,* 609 Pa. 22, 48, 14 A.3d 798, 814 (2011) (quoting *Commonwealth v. Rieck Investment Corp.,* 419 Pa. 52, 59–60, 213 A.2d 277, 282 (1965)).

Even so, we cannot accept the *Figueroa* court's broad interpretation of the term "lure," endorsed by the Commonwealth herein, which construes lure to include **any** offer of a ride in a car by an adult to a child, even if unaccompanied by an additional inducement for the child to enter the car. Such a construction is in conflict with the commonly understood and

most, unsuccessfully tried to do so which was conduct punishable by 18 Pa.C.S.A. § 901—criminal attempt—an offense for which he was not charged. Consequently, we did not specifically address the question of whether a mere invitation or offer constituted a lure under Section 2910, as that question was not presented to our Court for decision.

As the Concurring and Dissenting Opinion notes, in response to the *Tate* decision, the legislature amended Section 2910 to proscribe the offense of attempted luring and, also, established a specific defense for the offense of luring or attempting to lure a child into a structure: "It shall be an affirmative defense to a prosecution under this section that the person lured or attempted to lure the child into the structure for a lawful purpose." 18 Pa.C.S.A. § 2910(b). The Concurring and Dissenting Opinion contends that the failure of the legislature to provide a similar defense for attempting to lure a child into a motor vehicle evidences an intent by the legislature "to impose an absolute prohibition on trying to get a child into a vehicle without parental consent." Concurring and Dissenting Opinion at 557–58, 28 A.3d at 914. We respectfully disagree that the legislature intended, with this amendment, such a sweeping criminalization of even the mere offer of a ride. The addition of this affirmative defense merely indicates the legislature's heightened concern for situations where the alleged luring involves a structure; however, this addition does not shed light on the proper interpretation of what constitutes a "lure"—a term which is used both in the definition of the offense and in the affirmative defense. Critically, then, even with this amendment, the focus remains on what conduct constitutes a "lure."

approved usage of "lure," discussed *supra.* Further, such an expansive interpretation creates the potential that our Commonwealth's citizens will be unwittingly exposed to serious criminal liability and collateral consequences,[9] when they extend an innocent offer of a ride to a child out of a sincere desire to be helpful to the child, but do not have the opportunity to secure the child's parent's permission, nor possess clear proof that their consent could be implied. Under the *Figueroa* interpretation of Section 2910, any parent, coach, or teacher who spontaneously offers to drive their child's friends or acquaintances from athletic or band practice, a play, a concert, a show, or any other school or community activity, because he or she perceives such an offer to be a kind and prudent gesture under the circumstances, would potentially run afoul of Section 2910 simply by virtue of the fact they extended the offer, and did not have the opportunity to obtain parental consent. Likewise, any parent or neighbor who makes a similar spontaneous offer of a ride to school to their children's friends or acquaintances may, again, be subject to prosecution, in the absence of express or implied parental consent, solely because of their offer of the ride.[10] The plain language of Section 2910 does not support a conclusion that the legislature intended such a result. *See* 1 Pa.C.S.A. § 1922(1) (legislature does not intend a result that is unreasonable or absurd);

9. Under the present version of Megan's Law, an individual convicted of violating 18 Pa.C.S.A. § 2910 is deemed to be a sex offender and required to register for ten years with the Pennsylvania State Police.

10. The Concurring and Dissenting Opinion contends that such a prosecution would be foreclosed by the assumption that consent would be implied; however, the issue of what constitutes implied consent under Section 2910 is not currently before our Court. Moreover, the existence of implied consent is an amorphous and highly subjective concept, as this case demonstrates, as Appellant testified he believed that the children's parents would not have objected to his giving the boys a ride due to the fact that they lived nearby, and he was known to, and had friendly interactions with, many parents and their children in the neighborhood in which they all lived, N.T. Trial, 9/26/07, at 135. Amelioration of an incorrect interpretation of one portion of a penal statute imposing significant punitive consequences cannot depend on the grace of governmental officials in interpreting and applying other provisions of that enactment; rather, it is the sacrosanct obligation of our Court to furnish the correct meaning of the statutory term at issue.

*Gallagher, supra,* (recognizing that the offense of luring was enacted to further the important and salutary goal of preventing child kidnapping). As the *Figueroa* court's interpretation of "lure" is not in accordance with that term's plain meaning, we disapprove of it.

 Turning to the evidence herein, when viewed in a light most favorable to the Commonwealth, as our standard of review requires, *Eichinger, supra,* the record establishes only that Appellant offered two boys from his neighborhood a ride to school on two separate occasions—nothing more. He extended no other enticement, nor did he offer any other inducement to the boys for them to enter his car. Likewise, he did not direct or command them to enter his vehicle, nor did he threaten them with harm if they failed to accept his offers of a ride. Consequently, under these circumstances, where the evidence of record showed only that Appellant twice offered a ride to two children, and did not additionally provide any temptation or enticement for the boys to enter his vehicle, the mere act of offering the ride, standing alone, did not fall within the common, ordinary, and accepted meaning of a "lure." The evidence, therefore, is insufficient as a matter of law to support Appellant's conviction for attempted luring. Accordingly, the order of the Superior Court is reversed and Appellant is discharged.

Chief Justice CASTILLE, Justices BAER, McCAFFERY and ORIE MELVIN join the opinion.

Justice SAYLOR files a concurring opinion.

Justice EAKIN files a concurring and dissenting opinion.

Justice SAYLOR, concurring.

While determining the breadth of the statutory concept of "luring" presents an important question, I agree with Mr. Justice Eakin that the inquiry resides outside the boundaries of the issue the Court has framed for review in this case. *See* Concurring & Dissenting Opinion, *Op.* at 556 & n.1, 28 A.3d at 912–13 & n. 1 (citing *Commonwealth v. Hart,* 605 Pa. 406, 990

A.2d 724 (2010) (*per curiam*)). Notably, in framing the question presented in the Order allowing the appeal, the Court already had taken substantial liberties by substantively modifying the issue originally framed by Appellant (most of which seems to have been geared toward describing how mental deficiencies prevented him from apprehending the legal prohibition of his conduct).[1]

Since the majority broaches the definitional issue, consistent with the rule of lenity, I agree with its approach imposing a limiting construction relative to the otherwise undefined concept of "luring." I merely note that the Legislature may have wished to minimize the substantial subjectivity in terms of what may constitute a "lure" by casting a wide net.[2]

1. Appellant originally requested review on the following issue:
 Whether all the evidence produced at trial was considered that led the Trial Court to find that I, Mr. Hart's actions came within the scope for his conviction of 18 Pa.C.S. § 2910? My defense testified and presented witnesses to testify that I have a documented mental disability. This disability has impaired my judgment and his ability to discern that my good intention of offering these two neighborhood kids a ride to school could develop into a matter of the legal hardship that it has been for me. Will the Supreme Court take the time to consider upon this fact if the judgment on me, petitioner was unjustly or overbearing? The Common Pleas Court decided: I intentionally and *knowingly* without merit broke this law, The Superior Court responded I was responsible to understand the *common sense* definition of this law and referred to Pa.C.S.A. 1903. I ask you to see how unjustly they are to demand a man of my mental ability to be imposed to act in a matter of *common sense* when my mental level standards differ then what is considered common?
 Petition for Allowance of Appeal at 3 ("Questions Presented for Review") (emphasis in original).

2. For example, the majority appears to hold that the mere offer of a ride in an automobile, standing alone, cannot constitute a "lure." *See* Majority Opinion, *Op.* at 552–53, 28 A.3d at 911. This seems to exclude circumstances in which the vehicle itself may serve as the intended lure from a child's point of view, for example, where the vehicle is a high-end sports car. I do not find this to be consistent with the legislative aim.
 Nevertheless, as the General Assembly imposes more expansive prohibitions which do not encompass traditional *mens rea* requirements, constitutional concerns are magnified. *Cf. generally Commonwealth v. Samuels*, 566 Pa. 109, 113–46, 778 A.2d 638, 641–62 (2001) (Saylor, J., concurring). Tools of statutory construction, such as the rule of lenity and the presumption that the Legislature intends to comply with the Constitution, serve as a check on vague statutory drafting manifesting too much delegation to prosecutorial discretion as the sole measure to protect otherwise innocent conduct.

Justice EAKIN, concurring and dissenting.

I concur with the majority's holding 18 Pa.C.S. § 2910 does not require the Commonwealth to prove a person who attempts to lure a child into an automobile did so with the intent to harm the child. *See* Majority Op., at 552–53, 28 A.3d at 910–11. This answers the simple question presented for our review.[1] Nonetheless, the majority goes beyond the scope of the issue granted for appeal, and reverses appellant's conviction after defining "lure" as "the making of a promise of pleasure or gain, the furnishing of a temptation or enticement, or the performance of some other affirmative act calculated to strongly induce another individual to take a particular action." Majority Op., at 549–50, 28 A.3d at 909–10. Because the majority's interpretation of the term "lure" goes far afield of the plain meaning of the statute and constructs a definition neither intended by the General Assembly nor supported by this Court's case law, I respectfully dissent from that portion of the opinion.

The majority correctly points out that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Id.*, at 547, 28 A.3d at 908 (quoting 1 Pa.C.S. § 1921(a)). However, the majority concludes that intent must coincide with the dictionary's meaning, and determines "an attempt to 'lure' does not include the action of simply extending an offer of an automobile ride to a child, when it is unaccompanied by any other enticement or inducement." *See id.*, at 534, 549, 28 A.3d at 900, 909.

In *Commonwealth v. Tate*, 572 Pa. 411, 816 A.2d 1097 (2003), this Court analyzed the former luring statute[2] and

1. We granted allowance of appeal to address the following issue:
 Whether a person who offers a child a ride without previously obtaining the permission of a parent of the child, but who otherwise lacks criminal intent to harm the child, may be convicted of luring a child into a motor vehicle under 18 Pa.C.S. § 2910?
 *Commonwealth v. Hart*, 605 Pa. 406, 990 A.2d 724 (2010).

2. When we decided *Tate*, § 2910 stated:
 A person who lures a child into a motor vehicle without the consent, express or implied, of the child's parent or guardian, unless the circumstances reasonably indicate that the child is in need of assistance, commits a misdemeanor of the first degree.

addressed the issue of whether it included the inchoate offense of attempting to lure a child into a motor vehicle. In *Tate*, the trial court convicted the defendant of luring a child into a motor vehicle based on evidence that he drove up beside a 14–year–old girl walking home from school and told her to get into his car. *Id.*, at 1097. The defendant appealed his conviction, arguing he could not be guilty of luring because the girl never got into his car. *Id.* The Superior Court affirmed, reasoning that "§ 2910 is an absolute prohibition to inviting unknown children into vehicles." *Id.*, at 1098 (citing *Commonwealth v. Tate*, 789 A.2d 229, 231 (Pa.Super.2001)). We reversed the defendant's conviction, finding the plain meaning of the statute did not include an attempt to lure a child into a vehicle. *Id.* We noted that "[i]f the legislature wishes the *invitation* to be sufficient, it must say so." *Id.* (emphasis added).

After our decision in *Tate*, the General Assembly amended § 2910 to include attempted luring [3] and to include an affirmative defense for luring a child into a structure.[4] It did not extend that affirmative defense to vehicles. If the Legislature intended to provide an additional exception for "Good Samaritan" drivers, it could have done so. Instead, it did not include an affirmative defense for inviting a child into a vehicle for a lawful purpose, while specifically providing one for luring a child into a structure. Thus, in response to our rationale in *Tate*, the General Assembly clarified its intent to impose an absolute prohibition on trying to get a child into a vehicle

18 Pa.C.S. § 2910 (enacted 2/2/90).

**3.** The statute now provides:

> Unless the circumstances reasonably indicate that the child is in need of assistance, a person who lures *or attempts to lure* a child into a motor vehicle or structure without the consent, express or implied, of the child's parent or guardian commits a misdemeanor of the first degree.

18 Pa.C.S. § 2910(a) (amended 1/9/06) (emphasis added).

**4.** The statute provides the following affirmative defense:

> Affirmative defense.—It shall be an affirmative defense to a prosecution under this section that the person lured or attempted to lure the child into the structure for a lawful purpose.

18 Pa.C.S. § 2910(b).

without parental consent. The additional element my colleagues add, expanding luring to require some other act "strongly inducing" the child to get in the car, appears nowhere in the legislative process or result.

The plain language of the statute is clear, as is legislative intent demonstrated by the limitation on the affirmative defense: absent parental consent or emergency circumstances, an adult may not invite a child into a vehicle. While the majority desires to protect "Good Samaritans," its interpretation permits a would-be molester or kidnapper to invite a child into his vehicle without violating the statute, as long as he does so without offering any additional enticement or temptation. By expanding "luring" to include elements not in the statute, my colleagues create a loophole not intended by the Legislature, nor necessary to reach the end they seek. *See Tate*, at 1098 (citing 1 Pa.C.S. § 1921(a), (b)) ("It is not a court's place to imbue the statute with a meaning other than that dictated by the plain and unambiguous language of the statute.").

The danger my colleagues seek to prevent is prosecution of the innocent, the soccer mom who offers a ride home to a neighborhood kid without prior express parental permission. Were any law enforcement personnel so foolish as to bring such a charge, the statute would not permit such a prosecution, for parental consent may be implied in such a case. Common sense is not left at the curb, so to speak, and such implied consent is inherent in most every legitimate "Good Samaritan" situation. We need not graft lurid elements of temptation into the statute to protect the innocent—that protection exists with the requirement that there be no implied consent. We once lived in a world where offering your child's teammate a ride home was not only accepted, it was expected. While the world has changed, there remain bastions of civility where consent of the parent would still be implied by the circumstances—I suggest most if not all of Pennsylvania would be included. Consent is implicit in the soccer mom scenario. It is not inherent when a stranger, twice, offers a ride to kids not in need of a ride.

Protecting the Good Samaritan is not achieved by expanding the degree of enticement needed to prosecute—that merely creates a loophole for the wise enticer. Protection, as foreseen by the Legislature, is in the implied consent provisions of the statute. Accordingly, I would affirm appellant's conviction, finding he violated the statute when he twice offered two young boys a ride in his truck without a suggestion of parental consent, express or implied, and when the circumstances did not reasonably indicate the boys were in need of assistance.