**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JAN ONDRA | : | |
| | : | |
| Appellee | : | No. 1296 WDA 2020 |

Appeal from the Order Entered November 2, 2020
In the Court of Common Pleas of Washington County
Criminal Division at No(s):  CP-63-CR-0001393-2019

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED: APRIL 13, 2022**

Appellant, the Commonwealth of Pennsylvania, appeals from the order

entered in the Washington County Court of Common Pleas, which granted the

petition for writ of *habeas corpus* filed by Appellee, Jan Ondra, and dismissed

the charges brought against Appellee.  We reverse and remand.

The trial court set forth the relevant facts of this appeal as follows:

> On the afternoon of June 20, 2019, the Centerville Borough
> Police received a 911-dispatch call to 43 Clark Street in
> Clarksville.  The 911 caller [was J.A. ("Mother"), and she
> described an incident involving her daughter ("Child") and]
> an older white male driving a blue van with white doors….
> Shortly after receiving the dispatch, Chief Jeffrey Barone
> spotted a van matching the description and conducted a
> traffic stop.  The driver was [Appellee], and Chief Barone
> asked him if he had recently interacted with children in
> Clarksville.  [Appellee] confirmed that he did.  Further,
> [Appellee] stated that he was in the area because he was

_____

[*] Retired Senior Judge assigned to the Superior Court.

researching tax sale properties. Additionally, he showed Chief Barone a list of the properties.

At this time, Chief Barone released [Appellee] and then proceeded to 43 Clark Street to investigate. When he arrived, he interviewed [Child] as well as [Mother] about the encounter. [Child], a ten-year-old girl, told the officer that a van had stopped at the stop sign at the end of her block, backed up to her front yard, and from 23 feet away [the driver] stated, "Come on, I'm gonna take you home to your daddy."[1] After hearing this, the girl ran into her home and told her mother. The van did not leave when the girl ran into the house, and [Mother] identified the van.

At 43 Clark Street, Chief Barone also interviewed two additional witnesses. First, he interviewed a child, D.M., who was playing with [Child] when the incident occurred. Second, he interviewed a neighbor that interacted with [Appellee]. The neighbor told the officer that [Appellee] asked him questions concerning the sewer system in the neighborhood. [Appellee's] discussion with this neighbor occurred after the incident with [Child].

_____

[1] At the hearing on Appellee's petition for writ of *habeas corpus*, Child testified that Appellee said, "Get in the van. I'm going to take you home to your daddy." (N.T. Hearing, 8/17/20, at 26-27). Later at the hearing, Appellee disputed Child's account. In support of his assertions, Appellee submitted a recording of Mother's 911 call as Exhibit A. Although this exhibit is not included in the certified record, the trial court summarized the contents of the call as follows:

In Exhibit A, the 911 phone call from [Mother], [M]other stated that a man said to her daughter, "Get in the van. I'm taking you to your daddy." … However, [Child] can be heard in the background of this 911 call telling her mother that a man said, "Come on, I'm gonna take you home to your daddy."

(Trial Court Order and Opinion, filed November 2, 2020, at 3 n.4). Thus, throughout its opinion, the court quotes Appellee's statement based upon Child's comments from the background of the 911 call. The Commonwealth's brief, however, quotes Appellee's statement based upon Child's testimony at the hearing.

Two hours after the 911 call, and one hour after Chief Barone left 43 Clark Street, [Appellee] arrived at the police station. [Appellee] drove to the police station because several vehicles were following him.

At the police station, [Appellee] made a voluntary written statement describing the incident. He stated that he is in the real estate business. On the date of the incident, he spent the day researching approximately 12 to 14 tax sale properties. In Clarksville, he was examining the property at 57 Taylor Avenue. He stated that he was having difficulty determining whether there was public sewage so he drove around the neighborhood looking for manhole covers that would indicate public sewage. He stated that he saw a boy and a girl in a front yard, drove up, and asked if their mom or dad was home. He claimed that he said this because he wanted to talk to an adult about the sewage system. He stated that the children ran into the house, and he waited approximately 30-40 seconds, and when no one came out, he drove away. When he left, he saw a neighbor sitting on a porch, and [he] asked the neighbor about the sewage system. At this point, the neighbor confirmed there was public sewage in the neighborhood and showed [Appellee] a sewage manhole cover. After confirming the status of the public sewage system, [Appellee] drove to look at more tax properties and Police Chief Barone later stopped him.

(Trial Court Order and Opinion at 2-4) (internal record citation and footnotes omitted).

On August 27, 2019, the Commonwealth filed a criminal information charging Appellee with one count of luring a child into a motor vehicle.[2] Appellee filed an omnibus pretrial motion on September 27, 2019, which included a petition for writ of *habeas corpus*. In it, Appellee denied "making

_____

[2] 18 Pa.C.S.A. § 2910(a).

- 3 -

the statement attributed to him in addressing the child." (Omnibus Pretrial Motion, filed 9/27/19, at 8). Moreover, Appellee insisted that "the mere offering of a ride to a child does not constitute the offense of luring." (*Id.*)

On August 17, 2020, the court conducted a hearing on Appellee's pretrial motion. At that time, the Commonwealth asked the court for permission to amend the criminal information by adding additional counts of interference with custody of children and attempted interference with custody of children.[3] The court deferred ruling on the Commonwealth's request, and the Commonwealth proceeded to present testimony from Child and Chief Barone. On August 20, 2020, the Commonwealth formally filed a motion to amend the criminal information. That same day, the court granted the Commonwealth's motion.

By order and opinion entered November 2, 2020, the court granted Appellee's petition for writ of *habeas corpus*. Specifically, the court found that the Commonwealth failed to establish a *prima facie* case for the offenses at issue because "[t]here was no promise of pleasure or gain" made by Appellee to Child. (Trial Court Order and Opinion at 6). The Commonwealth timely filed a notice of appeal on December 1, 2020. The court did not order the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

---

[3] 18 Pa.C.S.A. §§ 2904(a) and 901, respectively.

The Commonwealth now raises one issue for our review:

> When a middle-aged man, a stranger, backed his van up from a stop sign to a 10-year-old girl who was playing by her house and said to her, "Get in the van, I'm going to take you home to your daddy," so that she ran inside terrified to her mother, is there *prima facie* evidence, viewing the evidence and its inferences in the light most favorable to the Commonwealth, that the stranger lured or attempted to lure her into his van or that he enticed or attempted to entice her from the custody of her parents?

(Commonwealth's Brief at 3).

The following principles apply to this Court's review of an order granting a pretrial petition for writ of *habeas corpus*:

> We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth. Whether the Commonwealth satisfied its burden of establishing a *prima facie* case for each charged crime is a question of law, to which this Court's standard of review is *de novo* and our scope of review is plenary.
>
> A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

***Commonwealth v. Wyatt***, 203 A.3d 1115, 1117 (Pa.Super. 2019) (internal citations and quotation marks omitted).

"The Commonwealth establishes a *prima facie* case when it produces evidences that, **if accepted as true**, would warrant the trial judge to allow

the case to go to a jury." ***Commonwealth v. Ouch***, 199 A.3d 918, 923 (Pa.Super. 2018) (emphasis in original) (quoting ***Commonwealth v. Marti***, 779 A.2d 1177, 1180 (Pa.Super. 2011)). "The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged." ***Id.***

On appeal, the Commonwealth contends that Appellee "backed his … van up from a stop sign to a 10-year-old girl who was playing by her house. He then said to her, 'Get in the van. I'm going to take you home to your daddy.'" (Commonwealth's Brief at 11). The Commonwealth insists these facts, viewed in the light most favorable to the Commonwealth, established a *prima facie* case supporting each charged offense. Regarding the trial court's finding that Appellee did not lure, entice, or attempt to lure Child, the Commonwealth argues that the court improperly weighed the evidence to determine that Appellee did not perform some affirmative act calculated to induce Child into entering his van.

Further, the Commonwealth asserts that the court incorrectly concluded that "[t]here was no promise of pleasure or gain nor the furnishing of temptation or enticement … in this case." (***Id.*** at 25) (quoting Trial Court Order and Opinion at 6). The Commonwealth emphasizes that the enticement offered by a defendant need not be limited to "fun" items, such as soda or money. In the instant case, the Commonwealth maintains that Appellee

enticed Child with the opportunity to see her father:

> [I]f an enticement or inducement under [**Commonwealth v. Hart**, 611 Pa. 531, 28 A.3d 898 (2011)] can consist of "the promise of the opportunity for the child to view an object of interest like a toy, a game, or a puppy," it can also consist of the promise or opportunity for a child to see or be reunited with a parent.
>
> Indeed, the parent-child relationship is the very thing that the child luring and interference with custody statutes protect. Both statutes ensure that children will not be taken from their parents without parental permission. [Appellee] weaponized the parent-child relationship when he said to a child, "Get in the van. I'm taking you to your daddy." He tried to use [Child's] relationship with her father to lure or entice [Child] into his van.

(Commonwealth's Brief at 27-28). The Commonwealth concludes that this Court must reverse the order granting Appellee's petition for writ of *habeas corpus*. We agree.

The Crimes Code defines the offense of luring a child into a motor vehicle as follows:

> **§ 2910. Luring a child into a motor vehicle or structure**
>
> **(a) Offense.**—Unless the circumstances reasonably indicate that the child is in need of assistance, a person who lures or attempts to lure a child into a motor vehicle or structure without the consent, express or implied, of the child's parent or guardian commits an offense.
>
> \* \* \*
>
> **(c) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
> "Child." A person under 18 years of age.

"Motor vehicle." Every self-propelled device in, upon or by which any person or property is or may be transported or drawn on a public highway.

*    *    *

18 Pa.C.S.A. § 2910(a), (c).

Section 2910 sets forth three requirements the Commonwealth must establish to convict an individual of luring: "(1) the individual attempted to lure a child into a motor vehicle; (2) without the express or implied consent of the child's parent or guardian; and (3) under circumstances which did not reasonably indicate the child is in need of assistance." *Hart, supra* at 548-49, 28 A.3d at 909.

> As the legislature did not define [the] term ["lure"], its common and approved usage may be ascertained by examining its dictionary definition.
>
> The most commonly accepted definition of "lure" when used as a verb is "to tempt with a promise of pleasure or gain." Further, "lure suggests an irresistible force, as desire, greed, curiosity, etc. in attracting someone, esp[ecially] to something harmful or evil." Necessarily, then, we determine that a "lure" involves the making of a promise of pleasure or gain, the furnishing of a temptation or enticement, or the performance of some other affirmative act calculated to strongly induce another individual to take a particular action, usually and most often likely to result in his or her harm.
>
> By contrast, the acts of merely extending a plain invitation, or making a neutral offer to another person, which are unaccompanied by any inducement intended or designed to increase the probability that the person will accept, do not, in their most common understanding, constitute endeavors to "lure." Such acts simply do not involve the additional and extra element of powerful persuasion designed to influence

the person to take action, which is the *sine qua non* of a lure.

Therefore, as the legislature specifically chose to use the term "lure" in Section 2910, not alternative words such as "invite" or "offer entry," and because this is a penal statute which we must strictly construe, it is only that particular and specific conduct meeting the definition of a "lure" which this statute properly may be interpreted to criminally prohibit. Consistent with the plain and unambiguous meaning of the term "lure," we therefore hold that an attempt to lure under Section 2910 does not occur upon the mere offer of a ride in a motor vehicle to a child, but, rather, involves only situations where a child is provided a further enticement or inducement to enter the vehicle, in addition to the offer of the ride, particularly under such circumstances which suggest the child is being led into a potentially harmful situation.

*Id.* at 549-50, 28 A.3d at 909-10 (internal citations omitted). **See also**

**Commonwealth v. Walker**, 139 A.3d 225 (Pa.Super. 2016), *appeal denied*,

638 Pa. 767, 158 A.3d 1243 (2016) (holding sufficient evidence supported

defendant's conviction for luring a child into motor vehicle; victim testified

that defendant pulled his car alongside while she was walking, grabbed her

wrist, and tried to pull her toward his car; defendant committed affirmative

act calculated to strongly induce victim to enter his car).

The Crimes Code defines the offense of interference with custody of

children as follows:

### § 2904.  Interference with custody of children

**(a)    Offense defined.—**A person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so.

18 Pa.C.S.A. § 2904(a).

> A "taking" from custody "connotes a substantial interference with parental control." Although no case has assigned a specific definition to "taking," it appears that an affirmative physical removal of the child is necessary. Similarly, "enticing" has been defined as "[t]o wrongfully solicit, persuade, procure, allure, attract, draw by blandishment, coax or seduce." Finally, "it is the interruption of lawful custody, and not merely the 'taking,' that constitutes the statutory offense."

***Commonwealth v. Rodgers***, 599 A.2d 1329, 1331 (Pa.Super. 1991) (internal citations omitted). Additionally, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

Instantly, Child's testimony from the August 17, 2020 hearing established that she was playing with a friend "in the front yard at [her] mom's house" on the day of the incident. (N.T. Hearing at 26). Child described what happened next as follows: 22

> So a guy pulled up in a van. He went all the way down the street, stopped at the stop sign, and then backed up and he said, get in the van. I'm going to take you home to your daddy.

(***Id.*** at 26-27). Child identified Appellee as the driver of the van. (***See id.*** at 28). Child also explained that she did not know Appellee, and she was not supposed to go anywhere with him. (***Id.*** at 27).

Despite this evidence, the court determined that the Commonwealth failed to provide *prima facie* evidence of the offenses at issue:

> There was no promise of pleasure or gain nor the furnishing of temptation or enticement … in this case. This is not a case where a victim was offered "fun," a soda, or money. Rather, the [c]ourt must determine whether there was an affirmative act calculated to strongly induce the victim to get into the vehicle.

(Trial Court Order and Opinion at 6) (internal footnotes omitted).

Contrary to the court's assertions, Child's testimony established the furnishing of an enticement. Appellee tried to entice Child to enter the vehicle by offering to take her to her father. While the court correctly noted that Appellee's offer did not include a "fun" item like soda or candy, we cannot say that the objects of a child's interest are limited to "fun" items, particularly at the *prima facie* stage of the proceedings. **See Hart, supra** at 550-51, 28 A.3d at 910 (explaining enticement or inducement **may** be promise of pleasurable reward for entry into vehicle, such as receiving money or treat such as candy; likewise, similar attractive temptation could be created with the promise of the opportunity for the child to view object of interest). Under the totality of these circumstances, one could reasonably infer that Appellee's words amounted to a "promise of pleasure or gain" or "enticement" to Child through the offer of an opportunity to be driven to see a loved one.[4] **Id.** at 549, 28 A.3d at 909; **Rodgers, supra** at 1331.

---

[4] Because the court determined that there was no promise of pleasure or gain or furnishing of temptation or enticement, it proceeded to analyze whether Appellee performed some other affirmative act calculated to strongly induce Child to take a particular action. In its analysis, the court conceded that "the
*(Footnote Continued Next Page)*

Our review of the testimony produced at the hearing, viewed in the light most favorable to the Commonwealth, leads us to conclude that the Commonwealth presented sufficient evidence to establish a *prima facie* case as to the charges filed against Appellee.  **See Wyatt, supra**; **Ouch, supra**. Accordingly, we reverse the order granting Appellee's petition for writ of *habeas corpus* and remand this case for further proceedings consistent with this opinion.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2022

---

Supreme Court does not outline specific factors" to provide guidance on whether this element is present.  (Trial Court Order and Opinion at 6). Nevertheless, the court reviewed case law and found that one factor it should consider was the distance between Appellee and Child at the time of the incident.  The court cited two cases for the proposition "that a close proximity, up to 10 feet, is a factor that supports strong inducement." (**Id.** at 7).  With respect to this conclusion, we reiterate that Child's testimony supported the inference that Appellee furnished an enticement.  Therefore, the court did not need to analyze any additional factors to assess whether Appellee committed an affirmative act calculated to strongly induce Child to get into the vehicle, especially considering that this was the *prima facie* stage of the proceedings.