J-S57023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSH L. ANDERSON, | |
| Appellant | No. 2006 WDA 2015 |

Appeal from the Judgment of Sentence November 6, 2015
In the Court of Common Pleas of Warren County
Criminal Division at No(s): CP-62-CR-0000189-2014

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSH L. ANDERSON, | |
| Appellant | No. 2007 WDA 2015 |

Appeal from the Judgment of Sentence September 18, 2015
In the Court of Common Pleas of Warren County
Criminal Division at No(s): CP-62-CR-0000305-2014, CP-62-CR-0000306-2014

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSHUA LEE ANDERSON, | |
| Appellant | No. 2008 WDA 2015 |

- 1 -

J-S57023-16

Appeal from the Judgment of Sentence September 18, 2015
In the Court of Common Pleas of Warren County
Criminal Division at No(s): CP-62-CR-0000305-2014, CP-62-CR-0000306-2014

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED NOVEMBER 03, 2016**

Appellant, Josh L. Anderson, also referred to as Joshua Lee Anderson, appeals from the judgments of sentence imposed on November 6, 2015, docketed at 2006 WDA 2015, and September 18, 2015, docketed at 2007 WDA 2015 and 2008 WDA 2015.  This Court consolidated all of the cases *sua sponte* pursuant to Pa.R.A.P. 513 on January 22, 2016.  We affirm.

Procedurally unusual and confusing filing actions, both below and in this Court, have presented challenges to this disposition.  The two appellate dockets at 2007 and 2008 WDA 2015 appear to have been created due to the manner in which the documents were transmitted to this Court.  Review of the certified record at 2007 WDA 2015, which is an appeal of lower court docket CP-62-CR-0000305-2014, and the record at 2008 WDA 2015, which is an appeal of lower court docket CP-62-CR-0000306-2014, appears to indicate that Appellant's counsel correctly filed a single notice of appeal in the Warren County Court of Common Pleas, captioned with both lower court docket numbers.  These two lower court dockets had been consolidated for

_____

[*]  Retired Senior Judge assigned to the Superior Court.

- 2 -

trial by Warren County Court of Common Pleas order of December 23, 2014. Thus, a single notice of appeal at both lower court docket numbers was proper. *See* Pa.R.A.P. 341 and comment thereto. Inexplicably, however, the Warren County Clerk of Courts apparently forwarded to this Court **two** notices of appeal, as if there were two separate appeals taken, with the original filed at CP-62-CR-0000305-2014 and a true and correct photocopy at CP-62-CR-0000306-2014. Hence, upon receipt of the two notices of appeal, this Court issued two appellate dockets, 2007 WDA 2015 and 2008 WDA 2015, one to each notice of appeal we received. This action occurred before we consolidated the appeals in this matter and before the certified records were received by this Court.

Adding to the procedural irregularity, the case at 2006 WDA 2015, involving this Appellant but having a different victim, trial, and judgment of sentence, was not assigned its own journal number and listed consecutively; rather, this Court consolidated it *sua sponte* with 2007 and 2008 WDA 2015 in accordance with Pa.R.A.P. 513 by *per curiam* order on January 22, 2016. Order, 1/22/16. Thus, we have one brief from Appellant involving both trials. In pursuit of clarity of disposition, initially, we have separated out the appeal at 2006 WDA 2015 regarding the issue applicable only to that case. The other issue Appellant raises relates to his sexually-violent-predator ("SVP") designation in both cases; thus, it is addressed subsequently. Therefore, we have reordered the issues set forth in Appellant's brief.

## Facts and Procedural History in 2006 WDA 2015

In the appeal docketed at 2006 WDA 2015, the trial court summarized the facts as follows:

> Appellant met Victim, a sixteen year old minor, through Facebook. Appellant engaged in a course of conduct designed to create, promote, and maintain a relationship with Victim. Appellant eventually enticed Victim to spend a weekend with him. Appellant used a motor vehicle to transport Victim from her home to a motel. Appellant and Victim spent the weekend at the motel and engaged in sexual conduct.

Trial Court Opinion, 3/3/16, at 1.

Appellant was convicted by a jury on August 24, 2015, of interference with custody of children, luring a child into a motor vehicle, and corruption of a minor, relating to this victim. Following a hearing on November 6, 2015, the trial court determined that Appellant met the criteria of an SVP. Also on November 6, 2015, the trial court imposed an aggregate sentence of forty-eight to 108 months of imprisonment, delineated as follows:

- For interference with custody of children, a term of incarceration of twenty-seven to sixty months, to be served consecutively to the sentence Appellant was serving at Warren County Docket number 305 of 2014;

- For luring a child into a motor vehicle, a term of incarceration of twelve to twenty-four months, to be served consecutively to the sentence imposed for interference with custody of children;

- For corruption of a minor, a term of imprisonment of nine to twenty-four months, to be served consecutively to the sentence imposed for luring a child into a motor vehicle.

Sentencing Order, 11/6/15, at unnumbered 1–2. Appellant filed a motion to reconsider his sentence on November 12, 2015, which the trial court denied

after argument on November 25, 2015. Order, 12/1/15. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

**Issue and Discussion in 2006 WDA 2015**

In his brief, Appellant raises the following issue in this case:

Under Superior Court Docket[] 2006 WDA 201[5]/under Warren County Case Number: 189 of 2014 only[:]

B. Whether the trial court erred by failing to merge the sentences of interference with custody of children (f2) and lure child into motor vehicle (m1) despite the fact "(1) the crimes arose from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other."

Appellant's Brief at 4 (full capitalization omitted).

Appellant asserts that the trial court erred in failing to merge the sentences of interference with custody of children and luring a child into a motor vehicle. A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. ***Commonwealth v. Collins***, 764 A.2d 1056, 1057 n.1 (Pa. 2001). Accordingly, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Green***, 2016 PA Super 214, 2672 EDA 2014 (Pa. Super. filed September 16, 2016).

We have explained the inquiry when it is asserted that convictions should have merged for sentencing purposes, as follows:

Section 9765 of the Pennsylvania Sentencing Code provides as follows regarding the merger of crimes for sentencing purposes:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher-graded offense.

42 Pa.C.S. § 9765. Accordingly, merger is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other. *Id*.

*Commonwealth v. Jenkins*, 96 A.3d 1055, 1056 (Pa. Super. 2014) (footnote omitted), *appeal denied*, 104 A.3d 3 (Pa. 2014).

The Crimes Code defines interference with custody of children as follows:

**(a) Offense defined.**--A person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so.

18 Pa.C.S. § 2904 (a). The Crimes Code defines luring a child into a motor vehicle or structure as follows:

**(a) Offense.**--Unless the circumstances reasonably indicate that the child is in need of assistance, a person who lures or attempts to lure a child into a motor vehicle or structure without the consent, express or implied, of the child's parent or guardian commits an offense.

\* \* \*

**(b) Affirmative defense.**--It shall be an affirmative defense to a prosecution under this section that the person lured or attempted to lure the child into the structure for a lawful purpose.

**(c) Definitions.**--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Child."  A person under 18 years of age.

"Motor vehicle."  Every self-propelled device in, upon or by which any person or property is or may be transported or drawn on a public highway.

18 Pa.C.S. § 2910 (a)–(c).

The crime of luring a child into a motor vehicle pursuant to 18 Pa.C.S. § 2910 sets forth three requirements that the Commonwealth must establish:  (1) the individual lured a child into a motor vehicle; (2) without the express or implied consent of the child's parent or guardian; and (3) under circumstances which did not reasonably indicate the child is in need of assistance.  ***Commonwealth v. Hart***, 28 A.3d 898, 908–909 (Pa. 2011). Furthermore, a "lure" under this section:

> does not occur upon the mere offer of a ride in a motor vehicle to a child, but, rather, involves only situations where a child is provided a further enticement or inducement to enter the vehicle, in addition to the offer of the ride, particularly under such circumstances which suggest the child is being led into a potentially harmful situation.

***Id***. at 910.  The crime of interference with custody of children involves the knowing or reckless taking or enticement of a child from his parent or

guardian's custody without privilege to do so. There is no involvement of a motor vehicle.

Appellant asserts that the trial court should have merged the above offenses for sentencing because "the same elements had to be proven in both charges." Appellant's Brief at 21. We disagree. Appellant claims that it is "difficult to believe that if an individual 'lured a child into a motor vehicle' and was being charged for such an act that this act also did not include the interference of someone else's right to custody of that child." Appellant's Brief at 21. While acknowledging that luring a child into a motor vehicle required a motor vehicle as an element, Appellant's Brief at 22, Appellant maintains that "the legislature did not say that both charges had to have all of the elements of the other offense. . . ." **Id**. Appellant also asserts that an examination of the criminal information supports the conclusion that the offenses arose out of a single criminal act. **Id**. at 22–23.

This Court recently explained that while an appellant's crimes may occur during the same criminal episode, it is possible to engage in distinct acts that constitute separate crimes for which separate sentences are proper. We advised:

> In this regard, this Court's holding in **Commonwealth v. Pettersen**, 49 A.3d 903 (Pa. Super. 2012) is instructive:
>
> > When considering whether there is a single criminal act or multiple criminal acts, the question is not whether there was a break in the chain of criminal activity. The issue is whether the actor commits multiple criminal acts beyond that which is

necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

*Id*. at 912 (quotations and citations omitted).

***Green***, 2016 PA Super 214, at *8–9.

Upon review, we conclude that Appellant's argument is meritless. In doing so, we adopt as our own the well-reasoned analysis of the trial court, as follows:

The first requirement of merger is that the crimes arise from the same criminal act. That is not the factual situation in the present case. 42 Pa.C.S. § 9765. Appellant lured Victim into his motor vehicle outside of her home. Appellant then took Victim to a motel to engage in sexual conduct for the weekend. Appellant completed commission of the crime of Luring a Child into a Motor Vehicle when the Victim entered Appellant's motor vehicle outside of Victim's home. Appellant then continued to commit the crime of Interference with Custody of Children for the remainder of the weekend. The crimes were committed at different times and for differing lengths of time.

The second requirement of merger is that all of the statutory elements of one offense are include[d] in the statutory elements of the other offense. Appellant's essential argument is that the element relating to "consent" for the crime of Luring a Child into a Motor Vehicle and the element relating to "custody" for the crime of Interference with Custody of Children are the same element. Appellant failed to provide any legal support for that contention. Conflation of the terms "consent" and "custody" would violate the rules of statutory interpretation. Statutory construction regarding words and phrases specifies the following:

Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part,

shall be construed according to such peculiar and appropriate meaning or definition.

1 Pa.C.S. § 1903(a). The terms "consent" and "custody" are technical legal terms that have very different meanings. Therefore, the rules of statutory interpretation require the interpretation that the elements are distinct from one another.

Appellant failed to show that the facts and the law required the merger of the crimes of Luring a Child into a Motor Vehicle and Interference with Custody of Children in this case.

Trial Court Opinion in case docketed at 2006 WDA 2015, 3/3/16, at 3–4.

We also note that interfering with the custody of a child does not involve luring and the use of a motor vehicle. Thus, the merger issue lacks merit.

**Facts and Procedural History for 2007 and 2008 WDA 2015**

The factual basis for the appeals docketed at 2007 WDA 2015 and 2008 WDA 2015 involves another victim, as follows:[1]

1) On 7/22/14, Officers from this Department were dispatched . . . for a report of a possible 14 year old juvenile female having intimate contact with a known 34 year old male, . . .[Appellant]. The complainant stated that they witnessed the two kissing next to [Appellant's] vehicle, which was parked near the residence.

2) Officers arrived and spoke with the juvenile's mother, . . . who stated that she and the victim look alike and it was actually her kissing [Appellant] who is her boyfriend, not the juvenile. On 7/27/14 Officers from this Department

_____

[1] Because Appellant has failed to provide the notes of testimony from trial, and indeed, did not request their transcription, and the trial court did not summarize the facts of the crime, we have relied upon the affidavit of probable cause for explanation.

were on another call . . . and witnessed [Appellant] at the residence of the juvenile victim. The victim's father was confronted and he stated that [Appellant] liked his daughter and [he] wanted him off his property and away from the victim.

3) [Appellant] was told to leave the residence and stay away from the juvenile victim. The victim was brought to the City Police Department on 7/28/14 by her father and when asked if she knew why she was brought there she stated she did. The victim explained that she had sent [Appellant] naked photographs of herself via cellular phone messaging and she knew he was over the age of 18 years old.

4) On 7/30/14, your Affiant met the victim and her father at the Offices of Warren County C & Y where the victim was forensically interviewed. The victim revealed that she loved [Appellant,] and he asked her to send the photos of her naked body to [him]. The victim also admitted at this time that they have engaged in sexual intercourse and her mother . . . knew this and allowed it to happen.

5) On 7/31/14, your Affiant was advised that the victim in this case was changing her story about having sexual intercourse with [Appellant]. Your Affiant was advised this was after the victim spoke with [her mother] and [Appellant]. The victim was also taken from Warren by [her mother] and driven to the Youngsville Police Department to change her story, stating she was in love with [Appellant].

6) On 8/13/14, your Affiant met with [the victim's mother] at the City Police Department. [The victim's mother] was read the Miranda Warnings and she waived them agreeing to give a statement at this time. [The victim's mother] admitted that she was involved in a sexual relationship with [Appellant] since June of this year. [The victim's mother] also admitted that she and [Appellant] came up with a plan for [Appellant] to date her juvenile daughter.

7) [The victim's mother] admitted to your Affiant, that the first contact with the police on July 22 2014, she lied to them about her daughter kissing [Appellant]. [The victim's mother] stated that she did know that [Appellant] had sex with her juvenile daughter and she continued to engage in sexual

- 11 -

relations with [Appellant] also. [The victim's mother] stated that she did not have legal custody of her daughter and the victim's father was not advised of any of their plans.

Affidavit of Probable Cause, 9/4/14, at 1.

At Warren County Docket Number 305 of 2014, Appellant was charged with one count each of conspiracy to interfere with custody of children, corruption of a minor, and obstructing administration of law or other governmental function for crimes involving the fourteen-year-old victim. At Warren County Docket Number 306 of 2014, Appellant was charged with one count each of statutory sexual assault, corruption of a minor, and indecent assault for other crimes relating to this same victim. As noted *supra*, prior to trial and upon the Commonwealth's motion, the trial court consolidated the cases at these two Warren County docket numbers on December 23, 2014.

On January 20, 2015, a jury acquitted Appellant of obstructing administration of law or other governmental function and convicted him of all other charges. The trial court ordered an assessment by the Sexual Offenders Assessment Board ("SOAB"). Following a hearing on September 18, 2015, the trial court determined that Appellant met the

criteria of an SVP.[2]  Also on September 18, 2015, the trial court sentenced Appellant as follows:

At Warren County Docket Number 305 of 2014, the case docketed in this Court at 2007 WDA 2015:

- For conspiracy to interfere with custody of children, a term of incarceration of twenty-four to forty-eight months;

- For corruption of a minor, a term of incarceration of twelve to twenty-four months, to be served consecutively to the sentence imposed for conspiracy to interfere with custody of children.

At Warren County Docket Number 306 of 2014, the case docketed in this Court at 2008 WDA 2015:

- For statutory sexual assault, corruption of a minor, and indecent assault, "which merge for sentencing purposes" a "sentence[] in the Aggravated Range as follows:"

  o Incarceration of seventy-two to 144 months, to be served consecutively to the sentence imposed at Warren County Docket Number 305 of 2014 for corruption of a minor.

This resulted in an aggregate sentence of 108 to 216 months. Sentencing Order, 9/18/15, at unnumbered 1–3.  That same day, the trial court amended the sentence to note that Appellant was "not Boot Camp or

_____

[2]  This order was dated September 18, 2015, and docketed on October 9, 2015.

RRRI[3] eligible." Amended Sentencing Order, 9/18/15.[4]

Appellant filed a motion to reconsider his sentence and a motion for a new trial on September 28, 2015, which the trial court denied on November 23, 2015. Appellant filed a notice of appeal on December 21, 2015; both Appellant and the trial court complied with Pa.R.A.P. 1925.

**Issue and Discussion**

Appellant raises the following issue that is pertinent to the cases docketed at 2006, 2007, and 2008 WDA 2015:

> Under Superior Court Dockets 2006, 2007 and 2008 WDA 201[5]/Warren County Case Numbers: 189, 305 and 306 of 2014[:]
>
> A. Whether the trial court erred in finding the Commonwealth proved by clear and convincing evidence that [A]ppellant is a sexually violent predator?

Appellant's Brief at 4 (full capitalization omitted).

Appellant challenges the sufficiency of the evidence supporting his designation as an SVP, and he does so as it relates to both victims. Our standard and scope of review is well-settled:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the

_____

[3] RRRI is the acronym for Recidivism Risk Reduction Incentive. 61 Pa.C.S. §§ 4501–4512.

[4] The amended sentencing order was docketed on October 8, 2015. For purposes of clarity, while the trial in the case docketed at 2006 WDA 2015 occurred first, the SVP designation and sentencing therein were subsequent to the matter docketed at 2007 and 2008 WDA 2015.

fact-finder found clear and convincing evidence that the individual is an SVP. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

***Commonwealth v. Bak*er**, 24 A.3d 1006, 1033 (Pa. Super. 2011), aff'd, 621 Pa. 401, 78 A.3d 1044 (2013) (citation omitted).

This Court has explained the SVP determination process as follows:

After a person has been convicted of an offense listed in 42 Pa.C.S.A. § 9799.14, the trial court then orders an assessment to be done by the SOAB to help determine if that person should be classified as an SVP. An SVP is defined as a person who has been convicted of a sexually violent offense . . . and who has a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory. . . . Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to re-offend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element.

*Commonwealth v. Stephens*, 74 A.3d 1034, 1038–1039 (Pa. Super. 2013) (internal quotation marks, ellipsis, and citations omitted).

When performing an SVP assessment, a mental health professional must consider the following 15 factors: whether the instant offense involved multiple victims; whether the defendant exceeded the means necessary to achieve the offense; the nature of the sexual contact with the victim(s); the defendant's relationship with the victim(s); the victim(s)' age(s); whether the instant offense included a display of unusual cruelty by the defendant during the commission of the offense; the victim(s)' mental capacity(ies); the defendant's prior criminal record; whether the defendant completed any prior sentence(s); whether the defendant participated in available programs for sexual offenders; the defendant's age; the defendant's use of illegal drugs; whether the defendant suffers from a mental illness, mental disability, or mental abnormality; behavioral characteristics that contribute to the defendant's conduct; and any other factor reasonably related to the defendant's risk of re-offending. See 42 Pa.C.S.A. § 9799.24(b).

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189–190 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1199 (Pa. 2015).

As noted *supra*, we will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied. *Baker*, 24 A.3d at 1033. While Appellant asserts that "many of the statutory factors of 42 Pa.C.S.A. § 9795.4(b) are absent," Appellant's Brief at 15, he does not identify **what** factors are missing. *Id*. Further, Appellant contends that the discussion of predatory behavior by SOAB-certified member Brenda Manno,

who also is a licensed clinical social worker,[5] lacked any testimony that Appellant likely would re-offend, yet he fails to indicate where in the record such discussion exists. Appellant's Brief at 16; N.T., 11/6/15, at 3. It is not this Court's responsibility to comb through the record seeking the factual underpinnings of Appellant's claim. *Commonwealth v. Mulholland*, 702 A.2d 1027, 1034 n.5 (Pa. Super. 1997). Moreover, we note that "the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element." *Hollingshead*, 111 A.3d 189–190.

In assailing Appellant's SVP status, counsel confusingly combines the argument relating to Ms. Manno's findings in both cases, even though the witness conducted two separate evaluations. Indeed, counsel quotes Ms. Manno's testimony defining predatory behavior, the very testimony alleged to be absent, but wholly fails to identify the hearing, date, or place in the record where the testimony can be found. Appellant's Brief at 17. Appellant fails to specify where and in what record his contentions are relevant, instead arguing only in general terms that the evidence supporting the SVP finding is insufficient.

We disagree that Ms. Manno failed to testify regarding predatory behavior in general or that Appellant was likely to re-offend, specifically. At the November 6, 2015 hearing in the appeal docketed at 2006 WDA 2015,

_____

[5] The parties stipulated that Ms. Manno, who testified in both cases, was testifying as an expert witness. N.T., 11/6/15, at 4; N.T., 9/18/15, at 4.

- 17 -

Ms. Manno pointed out that "there's been victimization of three victims[6] now, all teenage female victims" reaching back to the year 2000, which impliedly relates to Appellant's willingness to re-offend. N.T., 11/6/15, at 20. Specifically relating to Appellant's predatory behavior, Ms. Manno stated:

> [T]here is a lengthy criminal history, that he already has a prior conviction for a sex offense against a minor, yet he engages in communication and Facebook friending a minor. He progresses that relationship to the point that he picks her up at the residence and takes her to a motel where he engages in sexual activity with her. Clearly that is maintenance or promotion at least in part to move that relationship into the sexual realm with this child.

*Id*. at 23–24. The trial court in 2006 WDA 2015 noted that Appellant presented no evidence to rebut the Commonwealth's evidence and concluded:

> Since the only evidence presented at the hearing was the assessment that engaged in the appropriate analysis and concluded that Appellant has a mental abnormality or disorder making Appellant likely to engage in predatory sexually violent offenses, then it was proper for the Court to find that the Commonwealth met it burden.

Trial Court Opinion in 2006 WDA 2015, 3/3/16, at 3.

At the September 18, 2015 hearing in the case docketed at 2007 and 2008 WDA 2015, Ms. Manno testified as follows:

---

[6] The reference to a third victim involved sexual activity prior to the instant cases. N.T., 11/6/15, at 10.

> [Appellant's] been in criminal situations before where he's been convicted of crimes and served periods of incarceration and probation. Specifically, he already [had] a history with a 16 year old child that he was criminally charged [with] so he clearly has knowledge that that behavior is inappropriate, yet he continues to promote this relationship, at least in part into the sexual realm with this girl, **and that's predatory in nature**.

N.T., 9/18/15, at 21 (emphasis added). In addressing Appellant's argument that he was not an SVP, the trial court in the cases docketed at 2007 and 2008 WDA 2015, stated as follows:

> Appellant does not argue that the Commonwealth failed to present necessary evidence. Instead, Appellant argues that the assessment found that certain factors were not present. That argument is without any merit:

>> In order for a person to be designated an SVP, the crime committed in the case under consideration need not have been predatory, although it must have been a sexually violent one. Commonwealth v. Fletcher, 2008 PA Super 74, 947 A.2d 776,776 (Pa. Super. 2008). Rather, what is required is that the person's mental abnormality makes the person likely to engage in predatory behavior, whether or not the offense at issue was predatory. Id. Naturally, the facts of the instant offense are material to the SVP assessment. See 42 Pa.C.S.A. § 9795.4(6) now 9795.24. However, there simply is no requirement that the charge under consideration be a predatory offense. Fletcher, 947 A.2d at 776. **Also, with regard to the various assessment factors listed in Section 9795.4 now 9795.24, there is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation**. Commonwealth v. Meals, 590 Pa.110, 912 A.2d 213, 220 -23 (2006). The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation. Id. at 222. Rather, the presence or absence of one or more factors might simply suggest the presence or absence of one or

- 19 -

more particular types of mental abnormalities. *See* id.at 221. Thus, while the Board is to examine all the factors listed under Section 9795.4 now 9795.24, the Commonwealth does not have to show that any certain factor is present or absent in a particular case. Meals, 912 A.2d at 221. Rather, the question for the SVP court is whether the Commonwealth's evidence, including the Board's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses. 42 Pa.C.S.A. § 9792.

Commonwealth v. Feucht, 2008 PA Super 176, ¶¶ 15-17, 955 A.2d 377, 381 (emphasis [in original]); 42 Pa.C.S. § 9795.24. As a Tier II sexual offense, Statutory Sexual Assault is, by statutory definition, a sexually violent offense. 42 Pa.C.S. § 9799.12; 42 Pa.C.S. § 9799.14(c). Appellant does not allege that the Sexually Violent Predator Assessment failed to consider a necessary factor, Appellant only alleges that the assessment found that certain factors were not present, which does not invalidate the assessment results. The [c]ourt also notes that Appellant did not present evidence to rebut the Commonwealth's evidence. Since the only evidence presented at the hearing was the assessment that engaged in the appropriate analysis and concluded that Appellant has a mental abnormality or disorder making Appellant likely to engage in predatory sexually violent offenses, then it was proper for the [c]ourt to find that the Commonwealth met its burden.

Trial Court Opinion in cases docketed at 2007 and 2008 WDA 2015, 3/4/16, at 1–2 (emphasis in original).

Appellant also suggests the instant cases are "similar in some respects" to **Commonwealth v. Plucinski**, 868 A.2d 20 (Pa. Super. 2005).[7]

_____

[7] **But see Commonwealth v. Morgan**, 16 A.3d 1165, 1173 (Pa. Super. 2011), where this Court recognized that in **Meals**, 912 A.2d 213, our Supreme Court effectively overruled our decision in **Plucinski**.

In describing that case, Appellant wholly fails to identify in what "respects" the case is similar. Appellant's Brief at 16. Our independent review of **Plucinski**, however, emphasizes significant differences from the instant cases, most importantly that therein, it was the "appellant's first sexual offense and that [he] had no history of failed treatment." **Id**., 868 A.2d at 27. In this case, Appellant continues to re-offend and has an extensive criminal history that includes repeated sexual behavior with teenage girls.

We have reviewed Ms. Manno's testimony at the hearing on September 18, 2015, in the case at 2007 and 2008 WDA 2015, as well as her testimony at the hearing on November 6, 2015, in the case at 2006 WDA 2015. Ms. Manno presented sufficient evidence of Appellant's predatory nature; therefore, we conclude that Appellant's argument is meritless.

Judgment of sentence dated November 6, 2015, affirmed.

Judgment of sentence dated September 18, 2015, affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/3/2016

- 21 -